(736 P.2d 82)

No. 59,448

Topeka Datsun Motor Company, *Appellee*, v. Paulette S. Stratton, *Appellant*.

Opinion filed April 16, 1987.

*Anne P. Garlinghouse*, of Topeka, for the appellant.

*H. Kent Hollins*, of Topeka, for the appellee.

Before DAVIS, P.J., PARKS and MEYER, JJ.

PARKS, J.: Plaintiff, Topeka Datsun Motor Co. (Topeka Datsun), brought this action for a deficiency judgment after defendant, Paulette S. Stratton, defaulted on a new truck loan. Defendant counterclaimed alleging plaintiff disposed of the collateral in a commercially unreasonable fashion, violated provisions of the Uniform Commercial Code (UCC) and Uniform Consumer Credit Code (UCCC), and relied upon an unconscionable sales contract. After a trial to the court, defendant's counterclaims for actual and punitive damages as well as statutory penalties and attorney fees were denied. Plaintiff was granted a deficiency judgment of $3,083.51 and defendant appeals.

On May 19, 1984, defendant took advantage of manufacturer sponsored 8.8% financing to buy a new Datsun "King Cab" pickup. She testified she had to wait in line to meet with the Topeka Datsun financing officer and that she was rushed and pressured into signing the contract. Defendant also testified she was told to sign the contract in two places and that she did so even though several essential terms had not been written into

the blanks on the form and she was given no time to read the contract. Defendant said that she provided a figure which would be her maximum acceptable monthly payment but that the final price, amount financed, and monthly payment terms were not stated in the contract when she signed it. She also testified she was given no option concerning the purchase of credit life or disability insurance and that, despite her inquiries, she was not told the amount of her monthly obligation until she received a payment booklet in the mail.

The retail sales contract was signed on behalf of Topeka Datsun by Marion Thomas. He testified that he had no involvement in the negotiations with defendant or personal knowledge concerning the manner in which the contract was executed by her. However, he testified that the ordinary practice of the dealership did not include pressuring the buyer's execution of an incomplete contract.

The contract, which obligated defendant to make payments of $272.92 for 48 months, was assigned with recourse to the Fidelity State Bank & Trust (Fidelity). Defendant made her payments directly to Fidelity and when she first received her payment book she contacted the bank seeking to modify the amount of the payments. Defendant was told the monthly obligation could not be altered. Defendant made a total of 12 monthly payments between June 18, 1984, and May 31, 1985. The December 1984 payment was not made until January 11, 1985, after Fidelity sent defendant a notice of default and right to cure dated January 3. Defendant subsequently missed the June payment and once again called the bank about changing the terms of the payment schedule. The bank officer who dealt with defendant testified that he told defendant that the payments could not be altered and that she could either seek to refinance the loan with her own bank or sell the truck. The Fidelity employee could not recall whether he told defendant she would be liable for any deficiency if the truck were repossessed but stated that it was his usual practice to do so. Defendant called several local dealers about selling the truck but none of the dealers was interested. One of the dealers told defendant that if he wanted the truck he would be able to buy it wholesale when it was repossessed. Unable to sell the truck herself, defendant surrendered it to

Fidelity on July 29, 1985. Defendant was informed by letter the next day that Fidelity would sell the truck at a private sale but that defendant had ten days to redeem the truck.

Since defendant's purchase of the truck, Topeka Datsun has ceased doing active business. When plaintiff bought the truck Topeka Datsun was a corporation wholly owned by the holding company EBI, Inc., which was in turn owned by Ed Bozarth. On July 1, 1985, Topeka Datsun merged with EBI, Inc.; the holding company took over all obligations of Topeka Datsun and its assets were sold. At all times pertinent to this case, Ed Bozarth was the president and sole stockholder of Ed Bozarth Chevrolet, Inc., and EBI, Inc.

After defendant surrendered the truck to Fidelity, it was taken to the lot of Ed Bozarth Chevrolet, Inc. The chattel paper held by Fidelity on the truck was reassigned to Topeka Datsun under Fidelity's right to recourse in exchange for the payment of $8,885.93 by EBI, Inc. Bids were orally solicited from local used car dealers between August 20 and September 20. Bids were received from Shawnee Wholesale for $4,800 and from Gurss Motors for $4,900. On September 20, a bid of $5,000 from Ed Bozarth Chevrolet, Inc., was made and accepted by EBI, Inc. The truck remained on the Ed Bozarth lot until it was sold at retail to a third party for $6,300. Plaintiff introduced evidence of the value of the truck surrendered by defendant according to the N.A.D.A. (National Automobile Dealers Assocation) official used car guide which indicated that the trade-in value of the truck was $4,800 while the retail value was $5,676. The N.A.D.A. guide also indicated that the special equipment on defendant's truck would add $850 to its value as trade-in and $925 to its retail value. The deficiency of $3,885 claimed by plaintiff was based on the $5,000 price paid in the private wholesale purchase by Ed Bozarth Chevrolet, Inc., rather than the subsequent retail sale.

Once defendant was notified by Fidelity that the truck would be sold in a private sale if she failed to redeem it in ten days, she received no further notice of time or manner of the sale or her right to bid on the truck. Defendant was not aware that she would be liable for a deficiency until she received a demand letter from an attorney on behalf of Ed Bozarth Chevrolet, Inc. When she failed to pay the deficiency, suit was filed in the name

of Topeka Datsun. Every effort has been made by the plaintiff to emphasize the independent corporate identities of Ed Bozarth Chevrolet and Topeka Datsun.

The district court reviewed the characteristics of a commercially reasonable sale and rejected defendant's claim that plaintiff's actions were unreasonable. The court did not specifically rule on the claim of unconscionability of the retail sales contract but denied defendant any relief. The court granted a deficiency judgment to plaintiff and defendant appeals.

I. Disposal of Collateral

Whenever a secured creditor accepts the surrender of collateral by a defaulting debtor, he may dispose of the collateral and seek a judgment for the balance of the indebtedness not satisfied by the sale proceeds. K.S.A. 84-9-504. However, the manner in which the creditor sells the collateral is subject to three essential limitations. K.S.A. 84-9-504(3). First, the creditor must give notice to the debtor concerning the sale unless the collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold on a recognized market. The notice required is reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made. The notice need not be given if it is waived in writing after default. The second limitation on the creditor's disposition of repossessed collateral restricts the creditor's right to buy the collateral. This limitation is stated as follows:

"The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale." K.S.A. 84-9-504(3).

Finally, the last restriction on the creditor's disposal of collateral stated in K.S.A. 84-9-504(3) is the general requirement that the sale be commercially reasonable in all respects including the method, manner, time, place, and terms. While commercial reasonableness and notice are specified separately in the statute, they are interrelated requirements. If a creditor fails to give the notice required prior to a sale, it is not commercially reasonable. *Garden Nat'l Bank v. Cada*, 11 Kan. App. 2d 562, 566-67, 729 P.2d 1252 (1986). See *Bank of Sheridan v. Devers*, 217 Mont.

173, 702 P.2d 1388 (1985); 9 Anderson, Uniform Commercial Code § 9-504:37 (3rd ed. 1985). Thus, commercial reasonableness is an umbrella term which encompasses all aspects of the sale including the notice given and the creditor's observance of the restrictions on purchases by the secured party. All of the various factors to be considered in determining whether a sale is commercially reasonable are discussed at length in *Westgate State Bank v. Clark*, 231 Kan. 81, 92-95, 642 P.2d 961 (1982).

The requirements of K.S.A. 84-9-504 apply to the sale of any repossessed collateral but the consequences of a failure to comply with the terms of the statute vary depending upon whether the underlying transaction was a commercial or a consumer transaction. In *Westgate State Bank*, 231 Kan. at 90, the Court rejected the argument that a creditor's failure to comply with K.S.A. 84-9-504(3) in a commercial transaction should bar the collection of a deficiency judgment. Instead, the Court held the creditor's failure to prove he complied with the UCC proscriptions would entitle the debtor to have the damages resulting from the unreasonable conduct set off against the amount of any deficiency due the creditor. By contrast, a consumer credit transaction under the UCCC is subject to K.S.A. 16a-5-103(1) which provides, "a consumer is not liable for a deficiency unless the creditor has disposed of the goods in good faith and in a commercially reasonable manner." Thus, when the UCCC applies, creditor misconduct in the disposal of collateral will operate to completely relieve the consumer debtor of the burden of paying a deficiency judgment as a matter of law. *Kelley v. Commercial National Bank*, 235 Kan. 45, Syl. ¶ 3, 678 P.2d 620 (1984).

The transaction involved in this case was a consumer credit transaction which was covered by the UCCC. The district court found that plaintiff technically complied with the notice requirement and carried its burden of proving the general commercial reasonableness of the subsequent sale. We turn first to consider the correctness of the court's holding regarding the sufficiency of the notice.

K.S.A. 84-9-504(3) requires in this case that "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent *by the secured*

*party* to the debtor . . . ." (Emphasis supplied.) The only notice ever sent to defendant regarding disposal of the collateral was the letter from Fidelity which identified Fidelity as the secured party and stated that it would sell the truck in a private sale sometime after ten days elapsed if defendant failed to exercise her right to redeem the collateral within that time. No notice was ever sent to defendant by plaintiff. Nonetheless, plaintiff contends that the letter sent by Fidelity complied with the statute and that it could rely on the notice as its own.

Initially, we note that the reasonableness of notice, like the broader question of commercial reasonableness, is ordinarily a question of fact to be determined by the trier of fact. *Kelley*, 235 Kan. at 51. However, since the only notice relied on by plaintiff is the letter from Fidelity, the construction and legal effect to be given this document is a matter of law. See *Cornwell v. Jespersen*, 238 Kan. 110, 118, 708 P.2d 515 (1985).

Plaintiff contends that at the time the letter from Fidelity was sent, Fidelity was the secured party. When plaintiff repurchased the collateral from Fidelity pursuant to its agreement, plaintiff argues it once again became the secured party and succeeded to all of Fidelity's rights including the right to rely on the letter as notice of the sale. K.S.A. 84-9-504(5) anticipates the type of repurchase agreement entered into by plaintiff and Fidelity and states as follows:

> "A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article."

This provision recognizes the possibility of an arrangement between a dealer and a financier, such as that which was present in this case, whereby the chattel paper generated from a secured transaction is sold to the financier with recourse to sell the paper back to the dealer in the event of default. In such a situation, the disposition of collateral may actually involve two steps: sale from the financier to the dealer and the subsequent sale by the dealer. K.S.A. 84-9-504(5) assures that the sale used to measure the amount of any deficiency owed by the debtor is determined by the ultimate sale by the dealer rather than the terms of any

repurchase agreement between the dealer and financier. *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976); K.S.A. 84-9-504(5) Kansas Comment 1983.

Fidelity was the secured party when defendant surrendered her pickup truck but once Fidelity exercised its right of recourse, plaintiff had "thereafter the rights and duties of the secured party." One such duty is to send notice of the sale to the debtor. Since K.S.A. 84-9-504(5) indicates it is the sale by the dealer which determines the amount of any deficiency and it is the dealer who controls the type and conduct of the sale undertaken, it is the dealer who should have the obligation to give notice to the debtor. *Modern Auto Co., Inc. v. Bell*, 678 S.W.2d 443, 445 (Mo. App. 1984); *Jefferson Corp. v. Marcano*, 60 Misc. 2d 138, 302 N.Y.S.2d 390 (1969). Cf. *Brown v. Ford*, 280 Ark. 261, 264, 658 S.W.2d 355 (1983) (notice from financier which stated that dealer would sell car but car could be redeemed prior to sale by paying financer fulfilled dealer's obligation to send notice). In *Modern Auto Co.*, 678 S.W.2d at 445, a car dealer sought to rely on the notice sent to a cosigner by the bank which had purchased the chattel paper from the dealer with recourse. The court rejected the dealer's argument holding that once the dealer repurchased the paper from the bank and became the secured party it was required to send notice of any sale it might undertake to the cosigner. The court noted that the dealer was not even aware any notice had been sent by the bank and could not therefore rely upon it.

Similarly, there was no evidence in this case indicating plaintiff had any knowledge of the letter sent by Fidelity when it failed to notify defendant of its intention to sell the repossessed truck at a private sale. The letter does not mention plaintiff and it states that the sale will be conducted by Fidelity. Thus, it appears the "sale" noticed by the letter is the transfer of the collateral to the dealer since this is the only sale made by Fidelity. No notice of any sale to be undertaken by plaintiff was given to the debtor at all.

Even if the letter from Fidelity could be relied upon as notice by Topeka Datsun, the contents of the letter failed to provide the debtor with reasonable notification. The letter stated as follows:

"This letter is to advise you pursuant to (K.S.A. 84-9-504 of) the Uniform

Commercial Code that after ten (10) days have passed following the date of this letter, Fidelity State Bank & Trust Co., as secured party, will make disposition at private sale of the following described property, pursuant to the terms of its security agreement and of the Uniform Commercial Code, to-wit:

One (1) 1984 Datsun 720 King Cab, vehicle IDJN6ND06S3EN013135

You are further notified that the net balance due Fidelity State Bank and Trust Company against the above-described collateral is $8,834.73 as of the date of the writing of this letter. You have ten (10) days from the date of this letter to redeem the above and foregoing security by making payment by cash, certified or cashier's check to Fidelity State Bank and Trust Company, in the foregoing amount.

We will look forward to your prompt reply."

K.S.A. 84-9-506 provides that a debtor has the right to redeem the collateral from the secured party "[a]t any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 84-9-504 or before the obligation has been discharged under section 84-9-505(2)." Fidelity's letter to defendant was dated July 30 and the collateral was transferred to Topeka Datsun on August 20. The truck was sold in the sale on which plaintiff relies to assert a deficiency on September 20. The transfer of the truck from Fidelity to Topeka Datsun was not a sale or disposition under the UCC (K.S.A. 84-9-504[5]) and this transaction was not subject to K.S.A. 84-9-504(3). Therefore, the defendant's actual period of redemption under section K.S.A. 84-9-506 ran until September 20, 1985. The letter from Fidelity would incorrectly lead a debtor to believe he only had until August 9 to effect a redemption.

In *First Nat'l Bank v. DiDomenico*, 302 Md. 290, 487 A.2d 646 (1985), the court held that while U.C.C. § 9-504(3) does not require the notice to the debtor to include information concerning his right to redemption, once the creditor undertook to represent those rights, their incorrect statement in a manner which gave the debtor less opportunity to redeem than he actually had, rendered the statement insufficient. The court held the notice including a misstatement of the debtor's redemption right was not "reasonable notification" as a matter of law.

We find the reasoning of the Maryland case to be persuasive. The purpose of the notice requirement is to enable the debtor to protect his interest in the property by redeeming it or finding a buyer to bid on the property so that the price obtained reflects its

actual value. *Modern Auto Co., Inc.*, 678 S.W.2d at 445; 9 Anderson, Uniform Commercial Code § 9-504:38. If the debtor is misled concerning the extent of his power to redeem, the notice is not merely incorrect—the entire purpose of the notice is undermined. The misleading notice becomes no notice at all. Therefore, since the only notice given the debtor in this case misrepresents her redemption rights, we conclude it was unreasonable as a matter of law.

In view of plaintiff's failure to provide reasonable notification to the debtor, we conclude the sale of collateral was not commercially reasonable. We therefore need not consider the other allegations made by defendant regarding the commercial reasonableness of the sale. The court erred in granting plaintiff a deficiency judgment because it failed to act in a commercially reasonable fashion as a matter of law. K.S.A. 16a-5-103(1).

II. Scope of Relief

In addition to disputing plaintiff's claim to a deficiency judgment on the basis of K.S.A. 16a-5-103(1), defendant also sought damages pursuant to K.S.A. 84-9-507(1) and costs and attorney fees under K.S.A. 16a-5-201(8). K.S.A. 84-9-507(1) provides as follows:

"If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price."

In *Westgate*, it was the existence of this statute which in part led the Court to conclude that a creditor should not be completely barred from receiving a deficiency judgment when he fails to conduct a commercially reasonable sale in a commercial transaction. The Court adopted the position which views U.C.C. § 9-507(1) as providing the exclusive remedy when a sale was not commercially reasonable. Thus, the court held that when a sale is not commercially reasonable, there is a rebuttable presumption that the value of the collateral was equal to the unpaid

balance of the debt. If the creditor overcomes this presumption, the debtor is entitled to have the damages identified in K.S.A. 84-9-507(1) set off against the deficiency. However, in a case such as this one, where the deficiency judgment is barred by the UCCC, it is an issue of first impression whether the debtor may also assert a claim for damages based on K.S.A. 84-9-507(1).

Defendant contends she should be entitled to the amount prescribed by K.S.A. 84-9-507(1) when the collateral is consumer goods because this is a penalty which is to be awarded "in any event." She claims she is entitled to receive $3,192.66 as the amount of the finance charge plus ten percent of the amount financed in addition to being relieved from liability for any deficiency by virtue of the UCCC.

A number of jurisdictions have considered whether a debtor should be entitled to the so-called "double whammy" sought by defendant when the creditor has acted in a commercially unreasonable fashion in a consumer transaction and the deficiency judgment was barred by the court's interpretation of the UCC. See generally, 1 Fonseca, Handling Consumer Credit Cases § 5:14, p. 193 n.9 (3rd ed. 1986); Clark, Law of Secured Transactions ¶ 4.12[5] (1980) and Cum. Supp. No. 2 (1984). Some courts have granted the debtor the benefit of both the bar to the deficiency and the minimum damages provided by U.C.C. § 9-507(1), while others limit recovery to relief from the deficiency or the damages, whichever is greater. Compare *Randolph v. Franklin Inv. Inc., Co.,* 398 A.2d 340 (D.C. App. 1979), and *Wilmington Trust Co. v. Conner,* 415 A.2d 773 (Del. 1980), with *Northwest Bank & Trust Co. v. Gutshall,* 274 N.W.2d 713 (Iowa 1979). However, we have found no cases considering the application of the minimum damage provision for consumer cases stated in U.C.C. § 9-507(1), when the deficiency judgment is barred by the consumer protection provisions of the UCCC rather than the UCC.

*Kelley* held that when provisions of the UCC and UCCC conflict, the provisions of the UCCC will control. However, there is no conflict inherent in the remedial provisions of the two laws. It could be argued that the statement of a special rule for consumer cases in U.C.C. § 9-507(1), when most consumer cases are also covered by the UCCC, reflects the legislative intent to

permit both remedies. On the other hand, there are certainly transactions in which an expensive consumer product, such as a luxury automobile or a mobile home, would be covered by the UCC but would not meet the $25,000 ceiling for application of the UCCC. K.S.A. 1986 Supp. 16a-1-301. Therefore, the UCC provision may be intended to fill the gap when the essential character of the transaction is a consumer one but the UCCC would not apply.

Defendant contends U.C.C. § 9-507(1) and U.C.C.C. § 5-103(1) are intended to remedy different injuries and should be regarded as complementary and cumulative. However, both provisions are triggered by the creditor's conduct in failing to meet the requirements of a commercially reasonable disposal of the collateral. The unreasonable sale of collateral inflicts only one injury on the debtor—the loss of the benefit he would have sustained if the sale had been properly carried out. Therefore, the debtor should only be entitled to the relief which best remedies that injury. Cf. *Merchandise Nat'l Bk. of Chicago v. Scanlon*, 86 Ill. App. 3d 719, 408 N.E.2d 248 (1980) (recovery allowed under UCC, TILA, and Ill. Interest Act for three injuries).

When the disposal of consumer collateral is commercially unreasonable but even a commercially reasonable sale would have resulted in an amount still owing, the UCCC bar against a deficiency judgment secures to the debtor the full protection of the UCC default provisions. In such cases, the bar to a deficiency will also convey a punitive message which will work toward future consumer protection. It is only when a commercially reasonable disposal of the collateral would have yielded a higher sum than the amount still owing that the debtor will not be fully protected from all injury from the violation of U.C.C. § 9-504. In such a circumstance, the debtor loses the benefit of the complete cancellation of his debt plus the surplus which could have been obtained if a proper disposal had been carried out. The debtor must be granted both the benefit of the bar to a deficiency and the damages provided by U.C.C. § 9-507(1) in order to obtain complete relief from the injury suffered.

We conclude that unless the commercially unreasonable conduct of the creditor causes the debtor in a consumer transaction

to lose the benefit of a surplus which would have resulted from a commercially reasonable sale of the collateral, the remedy of the debtor is limited to the denial of a claim for deficiency judgment under the UCCC. The penalty provided in K.S.A. 84-9-507(1) for cases involving consumer goods does not apply when the transaction is covered by the UCCC and a commercially reasonable sale of the collateral would still have resulted in an amount owing by the debtor.

III.   Claim of Unconscionability in the Sales Transaction

In addition to seeking to defeat plaintiff's claim for a deficiency judgment on the basis of K.S.A. 16a-5-103, defendant also alleged the sales contract was unconscionable, both procedurally and substantively. The district court did not specifically rule on defendant's allegation of unconscionability, but in light of its decision to enforce the agreement, we must presume the court found all facts necessary to support its judgment. *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 369, 598 P.2d 188 (1979).

The doctrine of unconscionability has been codified in our law in several distinct forms. For example, the sales article of the UCC provides that a court may refuse to enforce a commercial contract which it finds to be unconscionable. K.S.A. 84-2-302. The UCC provides no definition of the term but case law has identified a number of factors for the court to consider in deciding whether a transaction is unconscionable. *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 758-59, 549 P.2d 903 (1976). The Consumer Protection Act, K.S.A. 50-627, also prohibits unconscionability but in the context of a "consumer transaction"—a term which is very broadly defined. K.S.A. 50-624(c). The prohibited unconscionability may arise out of advertising, the terms of the contract, or debt collection practices. However, under both the UCC (K.S.A. 84-2-302[1]), and the Consumer Protection Act (K.S.A. 50-627[b]), unconscionability is a question of law for the trial court. *Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 522, 664 P.2d 813 (1983); *Wille*, 219 Kan. at 757. By contrast, the prohibition against unconscionable consumer credit contracts specifically states that it poses a question for the trier of fact. K.S.A. 16a-5-108(1) and (2). The unconscionability may arise in the setting of the contract's negotation or in the fine print of the

contract itself. In either case, if there is substantial competent evidence present to support the factfinder's conclusion no unconscionability took place, the finding must be upheld.

Defendant's claim of unconscionability is based entirely on the UCCC; she does not claim a violation of the Consumer Protection Act. Therefore, if the court's conclusion is supported by substantial evidence, it must be affirmed. Defendant's principal complaint is that the contract was presented by a party with superior knowledge and bargaining power, in a hurried fashion, and on a take it or leave it basis, with several critical terms left blank. There was no evidence directly contradicting defendant's characterization of the contract's execution, but plaintiff's manager testified that in the ordinary course of business, no buyer would be asked to sign an incomplete contract. The trial court must have found defendant's testimony that she was indeed presented with a blank contract to be incredible. Defendant is not an inexperienced buyer and the evidence indicated several terms of the sale were open for negotiation. The actual wording of the contract includes a number of legal terms which are no doubt beyond the knowledge of most laypersons but these terms for the most part simply state UCC rules concerning sales and secured transactions. Defendant was not misled by any of this language; she testified she did not try to read it. While there was certainly evidence from which the court could have questioned the manner of the contract's execution, the record does not justify the conclusion that a finding in favor of plaintiff was unsupported by the evidence.

Therefore, we conclude the court did not err in denying defendant any relief on her claim of unconscionability. In light of this conclusion, we need not consider defendant's appellate claims for actual and punitive damages and costs and attorney fees premised on the allegation of unconscionability.

IV.   Remaining Claims for Damages and Attorney Fees

Defendant also contends the trial court erred in denying her claim for a penalty under K.S.A. 16a-5-203(1) for the creditor's alleged failure to comply with truth in lending and notice to cure requirements. Defendant received one notice to cure when she defaulted on a payment in January and she was not entitled to a second notice for the later default. K.S.A. 16a-5-111(3). In addi-

tion, the claim of truth in lending violations relies upon defendant's contention she signed a contract which failed to disclose the monthly payment and other pertinent terms. While the court did not specifically state the finding that this was untrue, the court must have disbelieved defendant's characterization of the contract in light of its judgment. In view of the state of the record, this court is certainly not in the position to find a violation of the disclosure requirements of the UCCC.

Finally, defendant claims the court erred in denying her claims for costs and attorney fees pursuant to K.S.A. 16a-5-201(8). This provision states that whenever it is found that the creditor violated any of the UCCC provisions, the court shall award costs and attorney fees. This award is mandatory. *United Kansas Bank & Trust Co. v. Rixner*, 4 Kan. App. 2d 662, Syl. ¶ 7, 610 P.2d 116, *aff'd* 228 Kan. 633, 619 P.2d 1156 (1980).

K.S.A. 16a-5-103(1) essentially incorporates the default provisions of the UCC so that a violation of K.S.A. 84-9-504 is a violation of K.S.A. 16a-5-103(1). Therefore, in view of our conclusion plaintiff did fail to conform to K.S.A. 84-9-504 and was barred from obtaining a deficiency judgment under K.S.A. 16a-5-103(1), defendant is entitled to costs and attorney fees.

The court's denial of relief on defendant's counterclaims for unconscionability and violation of truth in lending and notice to cure provisions is affirmed. Insofar as the court granted plaintiff a deficiency judgment and denied defendant's claim for costs and attorney fees, judgment is reversed. The case is remanded to the district court for judgment consistent with this opinion.