2024 IL App (2d) 240123-U
No. 2-24-0123
Order filed October 29, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LANDMARK CREDIT UNION, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-LM-23 |
| | ) | |
| KODY BURNIDGE, | ) | Honorable |
| | ) | Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Although the creditor's notice to the debtor stated that the repossessed collateral would be sold if the debtor did not redeem it within 21 days, the notification did not violate the Uniform Commercial Code because it expressly stated that the debtor could redeem the collateral before it was sold.

¶ 2   Plaintiff, Landmark Credit Union, sued defendant, Kody Burnidge, after defendant failed to make payments due under a retail installment contract for a vehicle purchase.  Later, plaintiff repossessed the vehicle.  After providing defendant with notice of its plan to sell the vehicle per section 9-611 of Uniform Commercial Code (UCC) (810 ILCS 5/9-611 (West 2020)), which included notice of defendant's redemption rights, plaintiff sold the vehicle.  Plaintiff then sought

to recover the deficiency balance from defendant. Thereafter, the parties entered into a settlement agreement under which defendant agreed to make monthly payments to plaintiff. The trial court entered an order incorporating the parties' agreement and dismissed the case without prejudice to reinstate if defendant breached the agreement. When defendant later breached the agreement, plaintiff moved to vacate the judgment. Defendant, in turn, moved to file an amended answer and class action counterclaim. Following a hearing, the court vacated the prior judgment and entered judgment in favor of plaintiff for the full amount due. The court also denied defendant's motion for leave to file an amended answer and class action counterclaim. Subsequently, defendant filed a postjudgment motion under section 2-1203(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203(a) (West 2022)), seeking to vacate the judgment for plaintiff. The court denied the motion, and defendant timely appealed.

¶ 3       On appeal, defendant contends that the trial court erred in (1) entering judgment for plaintiff and (2) denying his motion to vacate the judgment. According to defendant, the parties' agreement was unenforceable because defendant entered into the agreement based on the mistaken belief that plaintiff had the right to collect a deficiency from him. Defendant argues that plaintiff had no right to collect a deficiency from him because the notification it provided to defendant before it sold the vehicle misstated his redemption rights and, thus, was unreasonable under the notice requirements of the UCC. For the reasons that follow, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5       The following narrative is drawn solely from the parties' agreed statement of facts and the common law record. These sources reference various hearings held below, but the record contains no reports of proceedings.

¶ 6 On April 29, 2019, defendant signed a retail installment contract with Elgin Volkswagen to purchase a used Subaru Impreza (the vehicle). The contract granted Elgin Volkswagen a security interest in the vehicle. That same day, Elgin Volkswagen assigned the contract to plaintiff.

¶ 7 On March 21, 2022, plaintiff filed a complaint against defendant for detinue (count I), replevin (count II), and breach of contract (count III), alleging that it had not received from defendant monthly payments due as of July 16, 2021.

¶ 8 On May 24, 2022, defendant filed a *pro se* appearance and answer.

¶ 9 On October 25, 2022, the parties appeared in court. Defendant agreed to turn over the vehicle to plaintiff on November 21, 2022. The matter was set for status on November 29, 2022.

¶ 10 On November 28, 2022, plaintiff repossessed the vehicle.

¶ 11 Defendant did not appear for status on November 29, 2022. The matter was continued to January 24, 2023, for a "Hearing on Motion/Petition For/To: Judgment on Count III."

¶ 12 On November 30, 2022, plaintiff sent defendant a notice titled: "NOTICE OF OUR PLAN TO SELL PROPERTY AND NOTICE OF REDEMPTION" (sale notification). The sale notification provided in its entirety:

"Your Collateral was repossessed on 11/30/2022[1] because you failed to make payments as required under the terms of your loan.

If you do not redeem the Collateral, as described below, within twenty-one (21) days from the date of mailing of this notice, the Collateral will be sold at a private sale sometime on or after 12/23/2022. A sale could include a lease or license.

---

[1]We note that the agreed statement of facts indicates that plaintiff repossessed the vehicle on November 28, 2022.

You may redeem the 2017 SUBARU Impreza-4 4S3GTAK69H3720744 at any time before it is sold by calling Landmark Credit Union at the number below. You must also cure any other defaults under the contract. To learn the exact amount you must pay to redeem the vehicle including our expenses, and from whom the vehicle may be redeemed, you may contact us at:

Landmark Credit Union

P.O. Box 510870

New Berlin, WI 53151

(855) 815-6391

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us or write us at the contact information provided above and request a written explanation. We will not charge you for any explanation.

If you do not redeem the 2017 SUBARU Impreza-4 4S3GTAK69H3720744 the money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else. If you still owe us money after the sale, you will be charged interest at the rate specified in your contract, until you pay all you owe."

¶ 13    On January 24, 2023, the trial court directed plaintiff to provide an accounting of the disposition of the vehicle by the next court date, March 28, 2023.

¶ 14    On March 8, 2023, plaintiff sent defendant a notice titled: "Notice After Sale of Collateral" (postsale notice). The postsale notice informed defendant that plaintiff sold the vehicle on January

19, 2023. The postsale notice provided an accounting of the sale proceeds and indicated a "Net Deficiency Balance After Sale" of $13,150.63.

¶ 15    On March 28, 2023, plaintiff was ordered to "file its accounting of the sold collateral" by April 11, 2023. Defendant was ordered to file any objections thereto by April 25, 2023.

¶ 16    On April 6, 2023, plaintiff filed the postsale notice.

¶ 17    On May 3, 2023, defendant filed a *pro se* form "Answer/Response to Complaint/Petition," in which he challenged certain amounts in the accounting. On that same day, defendant was granted seven days to file his objections to the accounting.

¶ 18    On May 31, 2023, defendant filed his *pro se* "Objections to Plaintiff's accounting/questions."

¶ 19    In June 2023, defendant agreed to pay plaintiff $12,146.11 to satisfy the deficiency. That agreement was memorialized in the "Stipulation to Dismiss with Leave to Reinstate" (agreed order) filed on June 15, 2023. The agreed order set forth a settlement agreement, by which defendant agreed to pay plaintiff $12,146.11 in monthly installments and consented to the entry of judgment against him if he failed to meet those terms. The parties agreed that plaintiff's action would be dismissed "without prejudice," but with "leave to reinstate if [d]efendant fail[ed] to abide by th[e] [settlement] [a]greement." Specifically, if defendant defaulted on the settlement terms, plaintiff would have leave to move the court "to reinstate th[e] case and to have [j]udgment entered against *** [d]efendant for *** $12,146.11, plus court costs and attorney[ ] fees, less any payments paid hereunder."

¶ 20    On October 5, 2023, plaintiff filed a "Motion to Vacate Dismissal Order, Installment Portion of Agreed Order[,] and for Judgment *Instanter*." Plaintiff alleged that defendant failed to

make payments per the agreed order. Plaintiff asked the court to vacate the agreed order and enter judgment against defendant for $12,146.11, plus costs.

¶ 21    On October 30, 2023, private counsel entered an appearance for defendant. That same day, defendant filed (1) a "Motion for Leave to File an Amended Answer and Class Action Counterclaim," and (2) a "First Amended Answer and Class Action Counterclaim." Defendant alleged in the motion for leave to file that he "was previously unaware that he ha[d] valid defenses and counterclaims." According to defendant, the sale notification "mislead [*sic*] [defendant] about his rights to redeem the vehicle." In particular, defendant argued that the sale notification "imposed an illegal 21-day deadline for him to redeem the vehicle," in violation of section 9-623(c) of the UCC (810 ILCS 5/9-623(c) (West 2020)), which provides that a debtor may redeem collateral "at any time before a secured party *** has disposed of [the] collateral or entered into a contract for its disposition[.]" Defendant claimed that, because he had been acting *pro se*, "[h]e had no idea that [defendant] violated his rights and ha[d] no right to collect a deficiency from him." He argued that "[a]ny alleged consent to have judgment entered against him was secured without full knowledge of the facts and law" and that the trial court should refrain from entering judgment against him and grant him leave to file an amended answer and class action counterclaim.

¶ 22    On November 7, 2023, the trial court (1) granted plaintiff's motion to vacate the agreed order and reinstate the case, (2) entered judgment for plaintiff and against defendant for $12,146.11, plus $414.52 in court costs, (3) denied defendant's motion for leave to file an amended answer and counterclaim, (4) struck defendant's first amended answer and counterclaim, and (5) found no just reason to delay enforcement or appeal of the judgment. In addition, according to the agreed statement of facts, "[t]he [c]ourt rejected [defendant's] oral argument that the [agreed

order's] installment agreement should be rescinded based on his material mistake of fact, reasoning that [defendant] made a mistake of law that did not permit rescission of the agreement."

¶ 23 On December 5, 2023, defendant filed a "Post-Judgment Motion to Vacate the Judgment" under section 2-1203(a) of the Code. Defendant argued that the November 7, 2023, order should be vacated for the following reasons: (1) "[t]he settlement was based on a mistake because [plaintiff's] [sale notification] violated the UCC, such that [plaintiff] never obtained a right to a deficiency from [defendant]"; (2) "[a]n agreement based on one party's mistake as to the other party's property rights is invalid, whether it is characterized as a mistake of law or fact"; (3) "[r]escission of the settlement [was] warranted due to [defendant's] material mistaken belief that [plaintiff] had a right to a deficiency judgment"; and (4) "[t]he settlement should also be rescinded because [plaintiff's] misrepresentation induced [defendant] to mistakenly believe [plaintiff] could collect a deficiency from him."

¶ 24 Attached to defendant's postjudgment motion were (1) defendant's affidavit, (2) the sale notification, (3) the postsale notice, and (4) the agreed order. In his affidavit, defendant averred, among other things, that before hiring an attorney, he "had never heard of the [UCC]" and did not know that plaintiff's "[sale notification] could have violated the [UCC]." He averred further that he did not "know that [plaintiff's] failure to send a proper [sale notification] meant they possibly could not collect more money from [him] on the loan." He maintained that he "would not have signed the settlement agreement with [plaintiff] had [he] known *** that [plaintiff] may not have a right to collect more money from [him]."

¶ 25 Plaintiff did not file a response to defendant's postjudgment motion. However, according to the agreed statement of facts, plaintiff "orally objected."

¶ 26    An order of December 19, 2023, stated that "[t]he parties both appeared by counsel and presented argument" on defendant's postjudgment motion.[2]  It stated further that, "[a]fter hearing argument, the [c]ourt *** requested the parties submit additional briefing."  The order provided a briefing schedule and set the matter for further hearing and a ruling on February 13, 2024, but the court indicated that it "may not move forward with [the scheduled] hearing if it believe[d] [that] it [would be] able to make a ruling based on the parties' written submissions and the oral argument held [that day]."

¶ 27    On January 16, 2024, plaintiff filed a motion for an extension of time to respond to defendant's postjudgment motion.  Plaintiff also filed a notice of remote hearing, indicating that its motion for an extension of time would be heard via Zoom on January 30, 2024.  Defendant filed a response, arguing that plaintiff's motion for an extension of time should be denied.

¶ 28    On January 30, 2024, the trial court entered an order stating that defendant's postjudgment motion was denied and that, therefore, plaintiff's motion to extend time was moot.

¶ 29    Defendant filed a timely notice of appeal from (1) the November 7, 2023, order entering judgment for plaintiff and (2) the January 30, 2024, order denying defendant's postjudgment motion to vacate.

¶ 30                                  II. ANALYSIS

¶ 31    Defendant contends that the trial court erred in entering judgment in favor of plaintiff and in denying his postjudgment motion.  According to defendant, the court should have rescinded the parties' underlying settlement agreement because defendant entered into the agreement with the mistaken belief that plaintiff had the right to collect a deficiency judgment from him.  Defendant

---

[2]The agreed statement of facts does not contain any reference to the hearing or order.

claims that plaintiff had no right to collect a deficiency from him because its sale notification was not reasonable under section 9-611 of the UCC (810 ILCS 5/9-611 (West 2020)). Defendant argues that this "mistake *** allows for rescission because an agreement based on one party's mistake as to the other party's antecedent rights is rescindable, whether it is characterized as a mistake of law or fact." He argues further that "[r]escission *** is warranted [here] because the mistake was material to the transaction and it arose from [plaintiff's] misrepresentations."

¶ 32    We first address our standard of review. Plaintiff contends that we should review the trial court's denial of defendant's postjudgment motion for an abuse of discretion, whereas defendant contends that our review must be *de novo*.

¶ 33    Defendant's postjudgment motion challenged the trial court's November 7, 2023, order under section 2-1203(a) of the Code, which permits a party to seek to vacate a judgment in a nonjury case. See 735 ILCS 5/2-1203(a) (West 2022). The purpose of such a motion " 'is to bring to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts at hand.' " *In re Marriage of Heinrich*, 2014 IL App (2d) 121333, ¶ 55 (quoting *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492 (2009)). "Generally, a trial court's decision to grant or deny a motion to reconsider will not be reversed absent an abuse of discretion." *Id.* "However, where the motion was based only on the trial court's application or purported misapplication of existing law, rather than on new facts or legal theories not presented at trial, a reviewing court reviews *de novo* the trial court's decision to grant or deny the motion." *Id.*

¶ 34    Defendant's postjudgment motion seems to argue only that the trial court erred in its application of existing law, *i.e.*, that even if, as the court found, defendant's mistake was one of law (not fact), that mistake still entitled him to rescission of the settlement agreement. Although

plaintiff filed no written response below, the court's December 19, 2023, order indicates that "[t]he parties both appeared by counsel and presented argument." As noted, the record contains no report of these proceedings. See Ill. S. Ct. R. 323(a), (c) (eff. July 1, 2017). And while the parties filed an agreed statement of facts, mention of the December 19, 2023, hearing is conspicuously absent. The court's December 19, 2023, order implies that the trial court considered no new evidence at that hearing but only the parties' "written submissions" and "oral argument." However, since we do not know what argument was presented, we do not know if the court was presented with "new *** legal theories" (*Heinrich*, 2014 IL App (2d) 121333, ¶ 55). The court ultimately decided not to receive additional briefing, and its subsequent order states simply that the motion "is denied." Because the basis of the court's denial of defendant's postjudgment motion is not apparent from the record, our standard of review is unclear. Nevertheless, we would affirm under either standard.

¶ 35 First, under the abuse-of-discretion standard of review, we would affirm for lack of a sufficient record. It is well established that the appellant has the burden to present a sufficiently complete record of the proceedings below to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Without such a record, this court "presume[s] that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.* at 392. Any doubts arising from the incomplete record will be construed against the appellant. *Id.* As noted, there is no transcript, or acceptable substitute, of the hearing on defendant's postjudgment motion to vacate; thus, "there is no basis for holding that the trial court abused [its] discretion in denying the motion." *Id.*

¶ 36 Reviewing the matter *de novo* would also lead us to affirm. We may affirm on any basis appearing in the record, regardless of whether the trial court relied on that basis or whether its reasoning was correct. See *In re Estate of McDonald*, 2024 IL App (2d) 230195, ¶ 45 ("[W]e

review the result at which the trial court arrived rather than its reasoning and may affirm on any basis apparent in the record."). Here, we find that defendant's postjudgment motion was properly denied, because his argument in support rests squarely on the erroneous premise that plaintiff's sale notification was not reasonable under section 9-611 of the UCC (810 ILCS 5/9-611 (West 2020)).

¶ 37 The parties do not dispute the applicability of article 9 of the UCC (810 ILCS 5/art. 9 (West 2020)), which governs the foreclosure of security interests. See *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1073 (2007) (recognizing that article 9 of the UCC applies to motor vehicle retail installment contracts). Section 9-610(a) of the UCC (810 ILCS 5/9-610(a) (West 2020)) provides that, in the event of a default, "a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition" to satisfy the indebtedness. Section 9-611(b) provides that a secured party who disposes of collateral under section 9-610 "shall send" to the debtor "a reasonable authenticated notification of disposition." *Id.* § 9-611(b).

> " 'Unless there is an agreement to the contrary, the debtor is liable for any deficiency that results from the sale. [Citation.] Absent such an agreement, the only defenses available to a debtor against a deficiency judgment are lack of reasonable notice of the sale and commercial unreasonableness of the sale.' " *Stoval*, 374 Ill. App. 3d at 1074 (quoting *Standard Bank & Trust Co. v. Callaghan*, 177 Ill. App. 3d 973, 977 (1988)).

Here, the crux of defendant's claim is that the sale notification was unreasonable because it improperly curtailed defendant's redemption rights.

¶ 38 Comment 2 to section 9-611 of the UCC addresses "Reasonable Notification" and provides as follows:

"This section requires a secured party who wishes to dispose of collateral under Section 9-610 to send 'a reasonable authenticated notification of disposition' to specified interested persons, subject to certain exceptions. The notification must be reasonable as to the manner in which it is sent, its timeliness (*i.e.*, a reasonable time before the disposition is to take place), and its content. See Sections 9-612 (timeliness of notification), 9-613 (contents of notification generally), 9-614 (contents of notification in consumer-goods transactions)." 810 ILCS Ann. 5/9-611, Uniform Commercial Code Comment 2, at 794 (Smith-Hurd 2014).

¶ 39　For consumer-goods transactions, the content of a notification of sale is determined by sections 9-613 and 9-614 of the UCC (*id.* §§ 9-613, 9-614). Under section 9-613, the notification must

"(A) describe[ ] the debtor and the secured party;

(B) describe[ ] the collateral that is the subject of the intended disposition;

(C) state[ ] the method of intended disposition;

(D) state [ ] that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(E) state[ ] the time and place of a public disposition or the time after which any other disposition is to be made." *Id.* § 9-613(1)(A)-(E).

¶ 40　Section 9-614 addresses notifications in consumer-goods transactions. It incorporates the requirements of section 9-613 and adds other requirements. See *id.* § 9-614(1)(A)-(D). Thus, a notification in a consumer-goods transaction must also contain

"(B) a description of any liability for a deficiency of the person to which the notification is sent;

(C) a telephone number from which the amount that must be paid to the secured party to redeem the collateral under Section 9-623 is available; and

(D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available." *Id.* § 9-614(1)(B)-(D).

"A particular phrasing of the notification is not required." *Id.* § 9-614(2). Further, a notification "providing substantially the information specified" is sufficient even if the notification

"(A) is accompanied by or combined with other notifications;

(B) includes information not specified [in subsection (1)]; or

(C) includes minor errors that are not seriously misleading." *Id.* § 9-614(3).

¶ 41 Here, defendant does not claim that the sale notification fails to comply with section 9-614 of the UCC. Indeed, in reply to plaintiff's argument that the sale notification contains the requisite information, defendant states that the argument is a "red herring." Defendant contends, rather, that section 9-614 "does not immunize secured creditors from liability for adding additional language in a notice that undermines the very purposes of that notice requirement." According to defendant, the sale notification "misstated his right to redemption by imposing a premature 21-day deadline for him to redeem [his] vehicle." We disagree.

¶ 42 Under section 9-623(c)(2) of the UCC, applicable here, "[a] redemption may occur at any time before a secured party[ ] *** has disposed of collateral or entered into a contract for its disposition under [s]ection 9-610[.]" *Id.* § 9-623(c)(2). Accordingly, here, defendant could have redeemed the vehicle until it was sold on January 19, 2023. The sale notification advised defendant:

> "If you do not redeem the Collateral, as described below, within twenty-one (21) days from the date of mailing of this notice, the Collateral will be sold at a private sale sometime on or after 12/23/2022. A sale could include a lease or license.

> You may redeem the 2017 SUBARU Impreza-4 4S3GTAK69H3720744 *at any time before it is sold* by calling Landmark Credit Union at the number below." (Emphasis added.)

Thus, the sale notification expressly provided that defendant could redeem the vehicle until it was sold. Defendant does not acknowledge this language in his argument. Given this express provision, the sale notification did not misstate defendant's right to redemption. On the contrary, the notice essentially advised defendant that there was no risk that the vehicle would be sold any *sooner than* December 23, 2022. It put defendant on notice that, "sometime on *or after* 12/23/2022," the vehicle would be sold and that he could redeem the vehicle *any time before any sale* took place. One of the purposes of reasonable notification is to allow the debtor to exercise the redemption right. See *Boender v. Chicago North Clubhouse Ass'n, Inc.*, 240 Ill. App. 3d 622, 631 (1992) (citing *Wilmington Trust Co. v. Conner*, 415 A.2d 773, 776 (Del. 1980)). That purpose was effectuated here.

¶ 43 The cases relied on by defendant—two from sister state courts and one from an Illinois federal district court—do not warrant a different conclusion because the notifications at issue in those cases are readily distinguishable. We address each in turn.

¶ 44 In *First National Bank of Maryland v. DiDomenico*, 487 A.2d 646, 647 Md. (1985), the defendant borrowed funds from the plaintiff to purchase a mobile home and granted the plaintiff a security interest in the home. After the defendant defaulted, the plaintiff sent a notice that included the following language:

" 'You are entitled to redeem the said goods provided that within fifteen days from the date of delivery of this notice, you pay at the Bank the sum of $650.39 which is the aggregate amount in default under the Agreement, plus a delinquency charge of $0.00, or a total of $650.39 together with any other amount that may become due prior to redemption.

'If you do not redeem as aforesaid, the goods will thereafter be sold at private sale and if a deficiency arises, you will be liable for such deficiency.' " *Id.*

The reviewing court noted that, under the UCC, the defendant had the right to redeem the collateral until it was sold. *Id.* at 647-48. Thus, the court concluded that the notice was unreasonable because it erroneously advised the defendant that he had only 15 days to redeem the collateral. *Id.* at 648-49.

¶ 45 In *Moore v. Fidelity Financial Services, Inc.*, 869 F. Supp. 557, 558, 561 (N.D. Ill. 1994), the district court addressed the secured party's motion to dismiss the debtor's complaint alleging a violation of the UCC's notification requirements. The question was whether the complaint was sufficient to state a claim that the secured party's notice was unreasonable. *Id.* at 561. The debtor argued that the notice was unreasonable because it falsely stated that the debtor could redeem only until the date in the notice. *Id.* The relevant section of the notice read:

" 'You are hereby notified that the motor vehicle described herein has been repossessed and will be offered by Private Sale after 10:00 A.M. on the 5th day of May, 1994, and from day to day there-after [*sic*] until sold, unless redeemed by you prior to such date. If you wish to redeem said motor vehicle you must visit our office before said date and make arrangements satisfactory to us to resolve the delinquency.' " *Id.* at n.8.

Relying on *DiDomenico* and construing the complaint's allegations in the light most favorable to the debtor, the court concluded that the complaint sufficiently alleged a violation of the UCC's

notification requirements. *Id.* at 562-63. The court expressly noted that its "ruling should not be construed as a ruling on the reasonableness of the notice." *Id.* at 563.

¶ 46 Finally, in *Topeka Datsun Motor Co. v. Stratton*, 736 P.2d 82, 86-89 (Kan. Ct. App. 1987), the reviewing court considered whether the secured party provided the debtor with reasonable notice under the UCC. The notice, dated July 30, 1985, provided:

" 'This letter is to advise you pursuant to (K.S.A. 84–9–504 of) the Uniform Commercial Code that after ten (10) days have passed following the date of this letter, Fidelity State Bank & Trust Co., as secured party, will make disposition at private sale of the following described property, pursuant to the terms of its security agreement and of the Uniform Commercial Code, to-wit:

One (1) 1984 Datsun 720 King Cab, vehicle ID# JN6ND06S3EN013135

You are further notified that the net balance due Fidelity State Bank and Trust Company against the above-described collateral is $8,834.73 as of the date of the writing of this letter. You have ten (10) days from the date of this letter to redeem the above and foregoing security by making payment by cash, certified or cashier's check to Fidelity State Bank and Trust Company, in the foregoing amount.

We will look forward to your prompt reply.' " *Id.* at 88.

The collateral was sold on September 20, 1985. *Id.* The court held that the notice was unreasonable because, *inter alia*, it misinformed the debtor about her right of redemption. *Id.* at 88-89. Relying on *DiDomenico*, the court found that, because the collateral was sold on September 20, 1985, the debtor's redemption period under the UCC ran until that date. *Id.* Thus, the secured party's notice was unreasonable because the notice misstated the debtor's redemption rights, advising her that she had until August 9, 1985, to effectuate a redemption. *Id.* at 88; see Timothy

R. Zinnecker, *The Default Provisions of Revised Article 9 of the Uniform Commercial Code: Part II*, 54 Bus. Law. 1737, 1792 n.296 (1999) ("A common error is sending a notice that informs the debtor that its redemption rights will terminate after a specific number of days, rather than upon disposition.").

¶ 47　　Here, unlike in each of the above-cited cases, the sale notification expressly advised defendant: "You may redeem the 2017 SUBARU Impreza-4 4S3GTAK69H3720744 at any time before it is sold by calling Landmark Credit Union at the number below."  Similar language is lacking in the notifications at issue in defendant's cases.  Thus, those authorities do not support defendant's position.

¶ 48　　　　　　　　　　　　　III. CONCLUSION

¶ 49　　Accordingly, for the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 50　　Affirmed.