■ EUGENE SUMNER et al., Appellants-Respondents, v EXTEBANK, as Successor in Interest to CENTURY NATIONAL BANK AND TRUST COMPANY, Respondent-Appellant. — Order, Supreme Court, New York County (Leff, J.) entered April 24, 1981, which granted defendant's motion to set aside and vacate a jury verdict in favor of plaintiffs for $750,000 and directed a new trial, denied plaintiffs' motion to fix February 25, 1974 as the date from which interest on the verdict is to be computed, and which denied defendant's motion for summary judgment, unanimously modified, on the law and the facts, to the extent only of granting judgment for the defendant dismissing the complaint, without costs, and otherwise affirmed. In 1973, the plaintiffs formed Sumande Corp., a Liberian corporation, for the purpose of purchasing and operating a tanker. Thereafter, plaintiffs contracted to purchase a Greek oil tanker for $940,000, making a down payment of $94,000. The plaintiffs approached Extebank, then known as Century National Bank and Trust Company (Century), in order to obtain financing for the purchase of the tanker. Ultimately, plaintiffs contributed $325,000, of which $308,750 was designated loans to the corporation, and Century loaned $700,000 to the plaintiffs, taking a first preferred mortgage on the vessel. Along with personal guarantees and a general assignment of future earnings, moneys and claims, plaintiffs also signed a hypothecation agreement whereby they authorized Century to sell the stock of Sumande Corp. in the event of a default. Payment on the loan was scheduled to be made in 15 monthly installments beginning September 13, 1973. Immediately, however, the plaintiffs fell into default. Due to unanticipated repairs, the vessel made only one of its six contracted voyages and it was not until October 15 that Century received payment for the overdue amounts. On its next voyage, the vessel encountered mechanical problems and had to be towed into Boston Harbor. Between the time of the first payment in October, 1973 and January, 1974, no other payments on Century's loan were made. On January 23, 1974, Moran Shipping Agencies, Inc. filed a lien for services against the vessel in United States District Court for $52,286. Pursuant to an order of the court, the vessel was seized by the United States Marshal. Additional liens for approximately $36,000 were subsequently filed. Century was advised that inasmuch as the ship was registered in a foreign country, they would be subordinate to all liens of American trade creditors. (See US Code, tit 46, § 953, subd [a], par [2].) Century notified the plaintiffs, by certified mail, that their failure to lift the liens and make payments on the promissory note placed them, again, in default. In its letter, Century stated that it reserved all rights "including right to foreclose on the mortgage, sell the stock of the company and take any action necessary and proper for the protection of [their] interests." The plaintiffs testified that there were $200,000 in claims prior to the vessel's arrival in Boston and approximately $90,000 due for work in Boston. Arrangements were made in Boston to sell the ship at public auction by the United States Marshal on March 12, 1974. Century, realizing that its only security consisted of one heavily liened, disabled vessel, notified plaintiffs that they had three weeks to cure the default before an attempt would be made to sell the stock of Sumande Corp. Both parties then endeavored to find a buyer, and a number of prospects were investigated. Because of the numerous liens on the ship and the potentially unlimited

liability of Sumande Corp., no buyer was found. Notice was sent to the plaintiffs on February 19, 1974 that the stock would be sold on February 25, 1974 at 10:00 A.M. This, it should be noted, was completely in accordance with the demand note the plaintiffs signed which required that notice be mailed at least four days prior to sale. It is not disputed that plaintiffs had defaulted, or that Century had the right to sell the stock. On appeal, the question presented is whether reasonable notice of the sale had been given to the plaintiffs, and whether the method and manner of the sale were commercially reasonable, in accordance with subdivision (3) of section 9-504 of the Uniform Commercial Code. Plaintiffs testified that they did not receive formal notice of the sale until February 21 or February 22, 1974. There was ample testimony, however, that despite the possible late receipt of formal notice, the plaintiffs were aware of the time and date of the sale on February 19, 1974. Additionally, the plaintiffs knew of the bank's intentions for the entire preceding month. The plaintiff's efforts to sell the vessel were fruitless, and Century correctly felt that any delay in the sale would substantially jeopardize its position. Century displayed forebearance in not proceeding sooner, and it gave plaintiffs every opportunity to find a purchaser. On the day of the sale, only one bidder appeared, and the stock of Sumande Corp. was sold for $100,000. Subdivision (3) of section 9-504 of the Uniform Commercial Code grants the secured creditor the right to dispose of collateral in cases of default, as long as notice is sent to the debtor, and the sale is commercially reasonable as to the time, place, manner and terms. The purpose of the section is to insure that the debtor has an opportunity to redeem prior thereto, and that the property is not sacrificed at a price below its actual value. (*Syracuse Supply Co. v Vogel,* 78 AD2d 991, 992.) In the instant action, the debtor had ample opportunity to redeem the vessel. Plaintiffs' claim that the $100,000 price for the stock of Sumande Corp. was much below market value, therefore rendering the sale commercially unreasonable, is equally without merit. At the time of the sale, the known liabilities of the corporation totaled almost one million dollars; $580,000 was due Century, $96,000 due Manufacturers Trust Co., over $300,000 was due in trade debts (including amounts owed to Boston trade creditors), and there were $36,000 in unpaid insurance premiums. Although it is true that an insurance claim could be made for some of the unrepaired damages, the amount of the claim was unknown, and most of the liability of Sumande Corp. was not covered by insurance. Both the plaintiffs and Century approached a large number of prospective purchasers. The fact that only one bidder appeared does not make the sale commercially unreasonable. (*Matter of Zsa Zsa Ltd.,* 352 F Supp 665.) The low price paid and the lack of bidders were not the result of a commercially unreasonable sale, but were rather indicative of the lack of demand for a disabled vessel. (See *International Paper Credit Corp. v Columbia Wax Prods. Co.,* 79 AD2d 700.) The plaintiffs had paid $940,000 for the ship, free and clear, nine months earlier. With all the problems and debts, the $100,000 price for the corporation's shares cannot be deemed unreasonable. All other avenues had been explored, and the prospect of having to sell the ship at a distress saleprice all show the commercial reasonableness of the sale. Additionally, the plaintiffs contend that Century could have been more accommodating in that they could have held up the sale and allowed a third party time to see if he could finance the transaction. With a distress sale imminent, and their collateral rapidly deteriorating, Century was under no obligation to imperil its position even further. "The bank was a lender, not an investor or coentrepeneur; it had the right to define and limit the risks it would accept." (*Bankers Trust Co. v Dowler & Co.,* 47 NY2d 128, 134; see *Syracuse Supply Co. v Vogel, supra,* at p 992.) As a matter of law, the

sale was commercially reasonable, and the jury's verdict could not have been reached upon any fair interpretation of the evidence. (*Szabo v Super Operating Corp.,* 51 AD2d 466; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.09; *McDowell v Di Pronio,* 52 AD2d 749.) The court was correct in setting aside the jury verdict for plaintiffs, but should have gone further and dismissed the complaint. Concur — Kupferman, J. P., Sullivan, Ross, Lupiano and Asch, JJ.