70716. MASSEY FERGUSON CREDIT CORPORATION
v. BOND.
(335 SE2d 454)

POPE, Judge.

Plaintiff Massey Ferguson Credit Corporation (Massey Ferguson) appeals from a jury verdict in favor of defendant Charles A. Bond. Massey Ferguson brought this action to recover a deficiency judgment on three retail installment contracts covering certain farm equipment. Bond defended on the ground that the foreclosure sale was not commercially reasonable under the provisions of the Uniform Commercial Code. The sole enumeration of error is the trial court's denial of Massey Ferguson's motion for a directed verdict. *Held*:

The disposition of this case is governed by the provisions of OCGA §§ 11-9-504 and 11-9-507. These provisions are discussed at some length in the case of *Farmers Bank &c. v. Hubbard*, 247 Ga. 431 (276 SE2d 622) (1981). "[E]very aspect of the disposition of repossessed collateral must be commercially reasonable, including its method, manner, time, place and *terms* [cit.]; . . . the creditor has the burden of proving that the sale was commercially reasonable; . . . in proving that the sale was commercially reasonable the creditor must prove that the 'terms' were reasonable and this includes proof that the resale price was fair and reasonable. However . . . 'the fact that a better price could have been obtained by a sale at a different time or in a different method . . . is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.' " Id. at 435. " 'A sale is commercially reasonable where it is done in public, during business hours, upon adequate notice within a reasonable time of repossession, and under conditions reasonably calculated to bring a fair market price.' [Cit.] Where an advertised sale is held as sched-

uled, and the proper notice is given, any person has a right to enter a competitive bid. The opportunity for competitive bidding is established and that is all that is required under the Uniform Commercial Code even if no third party bid at the sale. [Cit.]" *Hardin v. Norlin Music*, 159 Ga. App. 167, 168 (283 SE2d 21) (1981).

Massey Ferguson adduced evidence showing that it repossessed the equipment (baler, bale carrier, mower, feed mill, and combine with grain table and reel) on August 6, 1982. Walter Bloodworth, area sales finance manager for Massey Ferguson, scheduled an auction sale for the equipment on Tuesday, August 31, 1982 at 10:00 a.m. at Campbell Tractor Company in Camilla. Notices of the sale were posted at the clerk of court's office in Grady County and at the Mitchell County Courthouse, as well as at Campbell Tractor Company. Legal advertisements of the sale were published in *The Camilla Enterprise* and *The Cairo Messenger*. Bloodworth, by telephone, notified area farm equipment dealers of the sale some fifteen days before the scheduled date.

On August 9, 1982 Massey Ferguson received an appraisal of the value of the equipment from Bryant Campbell, a dealer in farm equipment. Campbell personally inspected the equipment and checked the blue book value for such equipment. As a dealer, he attended several auctions a week for farm equipment and was very familiar with the local market conditions. He testified that in August 1982 the market for used farm equipment was "terrible" and "the worst I have ever seen." As of August 9, 1982 he appraised the combine, grain table and reel at $13,500 wholesale, $19,200 retail; mower $500 wholesale, $850 retail; feed mill, $1,500 wholesale, $2,500 retail; bale carrier, $100 wholesale, $175 retail; baler, $2,500 wholesale, $3,500 retail. It was also his testimony that these figures were the fair and reasonable values for these items on August 9, 1982.

The sale was conducted on August 31, 1982, the date previously scheduled. Terms of the sale were cash, with a provision for financing upon approval of credit by Massey Ferguson; sale to the highest bidder, with Massey Ferguson reserving the right to reject any bid it felt was too low. Massey Ferguson also reserved the right to bid itself. Each item was sold separately, except for the combine with grain table and reel, which was sold as a unit. Each item was sold "as is" without any warranty. Nine people were present at the auction, and six different people, not including the Massey Ferguson representative, bid on the equipment.

The equipment was sold for the following prices to the highest bidder. The combine, grain table and reel sold for $15,010. The feed mill, $1,710; the baler, $4,900; the bale carrier, $250; and the mower, $700. Each of these prices was in excess of the wholesale value assigned to the item by Massey Ferguson's appraiser, Campbell.

Walter Kuhling, regional collection manager for Massey Ferguson, testified about the deficiency owed by Bond after the sale. Deducting the amount realized from the sale, and adding interest and attorney fees as provided in the contract, the amount of the deficiency was $45,415.54.

Bond called only two witnesses, John Bell and himself. Bell, a farm equipment dealer, testified that had it been his equipment, he would have sold it at retail to get a better price. His opinion of the fair market value of the equipment was that all of the equipment was worth a total of $30,000. Bell said that in his opinion the combine with the grain table and reel was worth $25,000; yet, he admitted on cross-examination that he had been present at the auction, and had bid on the combine, but was unwilling to pay more than $15,000 for it. Bell also testified that an auction was the "legal and customary" way to dispose of repossessed property. Bond testified that at the time the equipment was repossessed, Bloodworth told him that the equipment ought to bring what was owed on it.

From the foregoing, it is clear that Massey Ferguson adduced sufficient evidence to show that the sale was conducted in a commercially reasonable manner. The sale was held in public, during normal business hours, with adequate notice, within three weeks of repossession at an auction sale calculated to bring a reasonable price for the equipment, and which, in fact, did bring prices in excess of the fair and reasonable value for the items as established by the appraiser.

Bond's defense established only that had the equipment been sold at another time at retail it might have brought a better price. Under the principles of *Hubbard* and *Hardin*, supra, this is not enough to create a jury issue. Further, Bond's own value expert was present at the sale and was not willing to pay more for the equipment than it brought at the sale. Bloodworth's statement to Bond was merely a speculation, a hope, obviously for Bond's sake, that the equipment would be sold for such a price that Bond would not be left with debt. However, this is not sufficient to create a jury issue concerning commercial reasonableness. While both Bell and Bond testified that they did not see the notices of the sale, they did not contradict the fact that Massey Ferguson had given notice to the public of the sale. Therefore, we must conclude that the trial court erred in not directing a verdict in favor of Massey Ferguson in the amount of $45,415.54.

*Judgment reversed. Deen, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 12, 1985 —
REHEARING DENIED SEPTEMBER 26, 1985 —

*Danny S. Shepard,* for appellant.

*J. Richard Porter III*, for appellee.