FIRST BANK OF SOUTH DAKOTA (NA-
TIONAL ASSOCIATION), MILLER,
SOUTH DAKOTA, a Banking Corpora-
tion, Plaintiff and Appellee,

v.

Barney VonEYE and Evelyn Mae Von-
Eye, Husband and Wife, Defendants
and Appellants.

and

United States of America, acting
through the Small Business
Administration, Appellee.

No. 15636.

Supreme Court of South Dakota.

Argued Sept. 3, 1987.

Decided June 1, 1988.

Bradley G. Zell of Heidepriem, Widmayer & Zell, Miller, for plaintiff and appellee.

Michael J. McGill and Todd C. Miller, Beresford, for defendants and appellants.

Mikal G. Hansen, Asst. U.S. Atty., Pierre, for appellee.

MORGAN, Justice.

First Bank of South Dakota N.A., Miller Branch (Bank), sued Barney VonEye and Evelyn May VonEye (VonEyes) on a promissory note, secured by a security agreement, and filed an ancillary action for claim and delivery to seize farm collateral subject to the security agreement. VonEyes appeal from the final judgment in favor of Bank. We affirm in part, reverse and remand in part.

VonEyes are farmer/ranchers who had transacted business with Bank for twenty-five years, through the spring of 1985.

VonEyes had a secured real estate loan with Bank and Bank provided an operating line of credit to VonEyes, secured by a security agreement on VonEyes' livestock, crops, feed, inventory and equipment. VonEyes also had other secured real estate loans with Federal Land Bank (FLB) and Farmers' Home Administration (FmHA). Any other pertinent facts will be commented upon in the analysis of the issues.

In response to Bank's complaints, VonEyes served and filed an answer and counterclaim and an amended counterclaim. The counterclaim alleged three counts: bad faith, breach of contract and commercial unreasonableness of the disposition of the collateral.

We perceive that the half dozen issues enumerated in VonEyes' brief fall into four categories and can be set out as follows:

1. The failure of the trial court to allow jury challenge to all bank customers when raised by pretrial motion and in the course of voir dire.

2. The trial court's error in granting a directed verdict on VonEyes' cause of action for breach of obligation for good faith dealing in commercial transaction per SDCL 57A–1–203.

3. Exclusion by the trial court of evidence of unreasonable trucking fees and insufficiency of the other evidence to support the jury verdict that the disposition of the collateral was in a commercially reasonable manner.

4. The allowance by the trial court of Bank's attorney fees incurred in both enforcement of the security agreement *and* the claim and delivery action.

We will consider these issues in the order enumerated.

VonEyes contend that the trial court committed reversible error in denying their motion to excuse all of Bank's customers from jury service. Prior to voir dire, defense requested a blanket challenge for cause to all depositors and borrowers of Bank on the theories of principal/agent relationship (SDCL 15–14–6(3)),[1] or that those potential jurors had an interest in the action (SDCL 15–14–6(5)).[2] VonEyes' counsel phrased their concerns as follows:

... Any individual who is banking at First Bank might have the even unknown bias in the back of their mind that if we award a money judgment it could be affecting the safety or status of our depositors at First Bank. By the same token, where you have any potential member of the jury that is currently obtaining, or operating funds at First Bank, we feel there is a real danger of prejudice in that particular juror thinking, my goodness, if I render a verdict in favor of First Bank what's the reaction going to be when I go into the bank six months from now to renew a note. We feel these are items of potential prejudice against my client.

The court denied the challenge at that time, but granted that individual voir dire would be allowed on the issue of bias or prejudice. During voir dire, VonEyes challenged two jurors for cause. The court granted one challenge on the basis of familial relationship. The court denied cause as to Larry Hurd (Hurd). VonEyes had used their three peremptory challenges before Hurd was called.

In their brief, VonEyes complain that of the twelve veniremen selected, five had a business relationship with Bank. Of these five, VonEyes challenged only Hurd for cause. It must be noted at this juncture that South Dakota cases which deal with juror qualification or impartiality are criminal in nature, but we believe the analyses in those cases are equally applicable here.

---

1. SDCL 15–14–6(3) provides, in pertinent part:
 Challenges for cause may be taken on one or more of the following grounds:
 ....
 (3) That the relationship of ... principal and agent exists between the juror and any party to the action....

2. SDCL 15–14–6(5) provides, in pertinent part:
 Challenges for cause may be taken on one or more of the following grounds:
 ....
 (5) Interest on the part of the juror in the event of the action, or in the main question involved in the action, except his interest as a member or citizen of a municipal corporation[.]

A 1958 case speaks directly to the importance of challenging for cause. *State v. Flack*, 77 S.D. 176, 89 N.W.2d 30 (1958).

A defendant should not be compelled to use his peremptory challenges upon prospective jurors who should have been excused for cause. Prejudice will be presumed if a disqualified juror is left upon the jury *in the face of a proper challenge for cause*, so that defendant must either use one of his peremptory challenges or permit the juror to sit.

77 S.D. at 179, 89 N.W.2d at 32 (emphasis added).

■ VonEyes failed to exercise their right to challenge four of the five veniremen who remained on the panel. Right of appeal has not been preserved as to these jurors. *See Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987). (A party who fails to challenge prospective jurors for disqualification and passes them for cause waives any objection to their selection as jurors.) Therefore, appeal is preserved only as to VonEyes' challenge for cause to Hurd.

The question remains whether the trial court committed reversible error in denying VonEyes' challenge to Hurd as a potential juror. SDCL 15–14–6(5) provides that a challenge to jurors may be taken on grounds of interest on the part of the juror in the event or in the main question involved in the action. "The ruling of the trial court will not be disturbed, except in the absence of any evidence to support it, in which case it becomes an error at law." *Flack*, 77 S.D. at 181, 89 N.W.2d at 32. *See also State v. Hansen*, 407 N.W.2d 217 (S.D.1987); *State v. Muetze*, 368 N.W.2d 575 (S.D.1985); *State v. Volk*, 331 N.W.2d 67 (S.D.1983).

■ A "mere expression of a predetermined opinion ... during voir dire does not disqualify a juror per se." *Hansen*, 407 N.W.2d at 220, *citing Muetze, supra; Flack, supra*. A potential juror should be excused for cause if he is unable to set aside preconceptions and render an impartial verdict. *Hansen, supra*. However, once a potential juror has declared, under oath, " ... 'that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him[,]' " he should not be disqualified as a juror. *Flack*, 77 S.D. at 181, 89 N.W.2d at 32. Finally, impartiality must be based upon the whole voir dire examination and single isolated responses are not determinative. *Hansen, supra; Flack, supra*.

■ We reject VonEyes' contention that the challenge to Hurd should have been sustained based on *State v. Thomlinson*, 78 S.D. 235, 100 N.W.2d 121 (1960). In that case, we held that the challenge should have been sustained as to jurors who held a *membership* in a cooperative association. The association had been burglarized by the defendant. The interest of the jurors in this case does not rise to the level of those in *Thomlinson*. The interest in *Thomlinson* was akin to an ownership interest where the jurors' pecuniary or financial interests were directly involved. Such is not the case here.

Upon an examination of the record in this case, it is evident that juror Hurd was thoroughly examined as to bias and prejudice. After an examination by counsel for both VonEyes and Bank, the court conducted the following voir dire.

The Court: Larry, in the course of the questions, I detected some reluctance.... and as I have asked before, in the event that you are on this panel, and voted to return a verdict in their favor, would that make you uncomfortable then going into the bank tomorrow or the next day and continue to try to conduct business with them?

Hurd: No.

The Court: Or do you think that would affect your relationship with the bank? Are you concerned about that at all?

Hurd: No I don't think it would affect my relationship. It is very professional.

The Court: Okay. So you have no problem sitting on the case, being fair and impartial to both sides in letting the chips fall where they may based upon the facts as you, the jury, will determine them and apply them to the instructions; is that correct?

Hurd: That's correct.

The Court: And would you weigh the witness' testimony, and I'm going to tell you how you view the testimony of witnesses, you would follow those instructions?

Hurd: Yes.

Thereafter, the court denied cause and seated Mr. Hurd on the jury. When voir dire examination of a juror "... 'is subject to more than one construction, a finding by the trial court either way upon the challenge is conclusive on appeal.'" *Flack*, 77 S.D. at 181, 89 N.W.2d at 32 (citation omitted). We conclude there was support in the evidence for the trial court's decision and accordingly affirm on this issue.

In order to discuss the remaining issues, it is necessary to establish the posture of the proceedings at the time the trial court ruled. The personal property had been seized, delivered to Bank, and sold at auction. In this action Bank sought a deficiency judgment. By answer, counterclaim, and amended counterclaim, VonEyes had sought recovery against Bank on three counts: bad faith involving the 1985 wheat crop; breach of contract to advance the 1984 FLB payment; and failure to dispose of collateral in a commercially reasonable manner. VonEyes' claim was brought on for trial to jury. At the close of all of the evidence, the trial court directed a verdict in favor of Bank and against VonEyes on the issues of bad faith involving the 1985 wheat crop and the alleged breach of contract to advance the 1984 FLB payment. The jury returned a verdict in favor of Bank and against VonEyes on the remaining issue on commercially reasonable disposition.

VonEyes' second issue is bifurcated in their brief. First, they argue that there is a cause of action for the tort of the breach of the obligation of good faith dealing in

3. SDCL 57A–1–203 provides:

Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement.

4. In this regard, we distinguish *Yankton Prod. Credit Ass'n v. Jensen,* 416 N.W.2d 860 (S.D. 1987), from the present action. In *Yankton*

commercial transactions under SDCL 57A–1–203.[3] Secondly, they argue that the trial court erred by directing a verdict against them on their claims under that theory. Bank's response, as to the first aspect, is that the trial court accepted VonEyes' argument and they were permitted to introduce evidence on that issue. That appears to be accurate. Bank has not asked for review on this issue, therefore, it is obviously not ripe for review. There is no settled law on that issue in South Dakota[4] and there is a split of authority elsewhere. We will therefore reserve judgment on that issue for another time when it is properly before us, briefed and argued by the respective sides. In the meantime, the existence of such a cause of action in tort is the law of this case only.

We then turn to the second aspect of the issue. Did the trial court err in directing a verdict against VonEyes? VonEyes' claim of breach of the obligation of good faith is premised on two alleged violations. First, they contend that Bank, in violation of previous years' practices and agreements, had refused to advance monies to permit them to make the payment due FLB in November, 1984, which resulted in the FLB initiating foreclosure proceedings. Second, they allege that Bank refused to advance sufficient money to permit them to harvest their 1985 crop and even threatened them with prosecution if they utilized the proceeds from any of the crop to pay such harvesting expenses, as a result of which the crop rotted in the field.

When faced with a motion for directed verdict, the court accepts as true the evidence presented by the non-moving party and indulges all legitimate inferences in favor of the party against whom the motion is brought. *Kreager v. Blomstrom Oil Co.,* 379 N.W.2d 307 (S.D.1985); *Budahl v. Gordon & David Associates,* 323

*Prod. Credit Ass'n,* the issue of bad faith was not properly before this court because the trial court had specifically found that Jensen had admitted there had been no bad faith exercised on the part of PCA. Nor was the issue decided in *Federal Land Bank of Omaha v. Jensens,* 415 N.W.2d 155 (S.D.1987).

N.W.2d 853 (S.D.1982); *Myers v. Quenzer,* 79 S.D. 248, 110 N.W.2d 840 (1961). The court must determine if there is any substantial evidence to sustain the cause of action. If there is such evidence as would allow reasonable minds to differ, the case must go to the jury. *Haggar v. Olfert,* 387 N.W.2d 45 (S.D.1986); *Sabag v. Continental South Dakota,* 374 N.W.2d 349 (S.D. 1985); *Lytle v. Morgan,* 270 N.W.2d 359 (S.D.1978).

What the trial court found, on directing the verdict in favor of Bank, was that VonEyes had not presented sufficient evidence to present the matter to the jury. Specifically, the court found that there was no evidence of consideration for Bank to continue to advance funds for the FLB payment and that Bank would have been placed in a worse position by releasing collateral to meet harvesting expenses. Further, the record indicates that many of VonEyes' allegations as to Bank's lack of good faith were unsubstantiated by any evidence that would indicate a lack of good faith. *See,* SDCL 57A–1–201(19). We affirm the trial court on this issue.

 The third issue centers around the question of commercially reasonable disposition of the collateral. VonEyes first complain that the trial court excluded evidence of what they claim to be excessive fees charged by the truckers who loaded the livestock from VonEyes' yard and delivered the same to the auction yard pursuant to the sheriff's directions. Before trial Bank apparently sought, by motion in limine, to preclude VonEyes from presenting evidence on their claim that excessive trucking rates were charged. VonEyes apparently claimed the charges were three times that allowed by PUC regulations. The motion in limine is not a part of the record, nor is there any semblance of an order by the trial court sustaining the motion except as can be gleaned from a transcript of a telephonic motion hearing held prior to the date set for trial. It is difficult to determine from the transcript what the basis was for Bank's motion. The trial court noted that there was no motion in the file but it kept referring to a memorandum that apparently set out Bank's position on the motion. That memorandum is not a part of the record either. We do not wish to discourage courts and counsel from using telephone conference calls wherever possible, but it is simply sloppy trial practice to fail to properly make, notice, and file motions to be considered by the court. Nor is this a case where we can say that on a silent record we will presume that the trial court acted correctly. Bank cannot be permitted to gain by the deleterious practices of its counsel.

Bank suggests that the trial court granted the motion because payment of the trucking fees is beyond the control of Bank. That may have been the trial court's reason. In the transcript we find the court saying:

I am going to grant your motion that it is correct and the sheriff controls those proceedings and actually, the creditor has no say in what the sheriff does. We run into that over here.

We are rather disturbed by the cavalier attitude Bank and the trial judge displayed toward VonEyes' complaint. We disagree with the thesis.

Bank, in proceeding as it did, was acting under authority of SDCL 57A–9–504 which provides that the proceeds of disposition shall be applied to the *reasonable* expenses of retaking. The statute further provides: "If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." SDCL 57A–9–504(2). In view of the fact that it was Bank that undertook this proceeding for possession of the collateral, it is Bank's responsibility to take such action as may be deemed necessary if the sheriff, or anyone acting in his behalf, authorized overpayment of trucking fees. That responsibility cannot be thrust upon the hapless debtor. The foregoing is not to say that there was indeed an excessive trucking charge made in this case; but rather to say that the issue is properly raised by VonEyes, although perhaps not in the right context. It is their contention that it is a factor to be considered in the

issue of commercially reasonable disposition of the collateral. In our opinion, however, the criteria for commercial reasonableness attach to the disposition or sale of collateral, not to the process of retaking. *Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961 (1982), *cited with approval* in *Topeka Datsun Motor Co. v. Stratton*, 12 Kan.App.2d 95, 736 P.2d 82 (1987); *Leasing Service Corp. v. Diamond Timber Inc.*, 559 F.Supp. 972 (S.D.N.Y.1983). "... 'Once a creditor *has* possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition.' ..." *Farmers State Bank v. Otten*, 87 S.D. 161, 167, 204 N.W.2d 178, 181 (1973) (emphasis added). The amount of trucking charges is more properly to be considered by the trier of fact in the Bank's principal action for deficiency judgment. Preclusion of introduction of that evidence was error.

VonEyes then argue that there was insufficient evidence to support the jury's verdict upholding Bank's position that disposition of the property was otherwise commercially reasonable.

▉ To support their claim of commercially unreasonable disposition, VonEyes advance four arguments. First, that the timing of the public sale of the cattle was unreasonable because the cattle would have brought a higher price if Bank had waited until the spring of 1986 to sell the cattle. (The cattle were sold in February 1986.) Secondly, an argument interrelated with the first argument, the seizure of the cattle, left them in a stressful state which reduced the proceeds at sale. Third, the cattle were sold on a per-pound slaughter basis, rather than as bred cattle, reducing the proceeds at sale. Finally, that the private sale of feed was made before all bids were received.

Commercial reasonableness of the sale of collateral is a question of fact. *United States v. Conrad Publishing Co.*, 589 F.2d 949 (8th Cir.1978); *John Deere Leasing Co. v. Fraker*, 395 N.W.2d 885 (Iowa 1986). It is not this court's function on appeal to weigh the evidence or to substitute this court's judgment for that of the jury. *Ur-*

*ban v. Wait's Supermarket Inc.*, 294 N.W.2d 793 (S.D.1980); *Robinson v. Mudlin*, 273 N.W.2d 753 (S.D.1979); *Nebraska Elec. Generation & Transmission Co-op v. Walkling*, 90 S.D. 253, 241 N.W.2d 150 (1976). "We must consider the evidence in the light most favorable to the prevailing party...." *Robinson*, 273 N.W.2d at 755. "The test is whether there is substantial, credible evidence which ... would tend to sustain a verdict." *Urban*, 294 N.W.2d at 795. "... 'The jurors are the exclusive judges of the weight of the evidence and the credibility of the witnesses * *.'" *Walkling*, 90 S.D. at 261, 241 N.W.2d at 155 (citation omitted).

A secured party's right to dispose of collateral under SDCL 57A–9–504(3) is subject to two requirements: (1) creditor must send notice of the sale, and (2) the method, manner, time, place, and terms of the sale must be commercially reasonable. VonEyes do not argue that notice was inadequate. In determining whether a sale is commercially reasonable

> '... "it is the aggregate of the circumstances in each case—rather than specific details of the sale taken in isolation—that should be emphasized in a review of the sale. The facets of manner, method, time, place, and terms cited by the Code are to be viewed as necessary, and interrelated parts of the whole transaction." '

*First Bank v. Haberer Dairy & Farm Equip.*, 412 N.W.2d 866, 871 (S.D.1987) (citation omitted); *In re Zsa Zsa Ltd.*, 352 F.Supp. 665, 670 (S.D.N.Y.1972), *aff'd* 475 F.2d 1393 (2d Cir.1973). It is uncontested in the record that the cattle market was down at the time of the sale due to weather conditions and that VonEyes' cattle had wintered poorly. VonEyes had requested that Bank allow them to keep the cattle until spring as they had adequate feed to sustain the cattle until that time. However, Bank felt that it was in the best interests of all parties to repossess the cattle and sell as soon as possible. In *Massey Ferguson Credit Corp. v. Bond*, 176 Ga.App. 217, 335 S.E.2d 454 (1985), farm equipment was auctioned off at a

time when, as testified to by a dealer, the market for used farm equipment was "terrible." The court noted that the claim of commercially unreasonable sale established only that had the equipment been sold at another time it might have brought a better price. The court reiterated the established rule that, "the fact that a better price could have been obtained by a sale at a different time or in a different method ... is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." 176 Ga.App. at 217, 335 S.E.2d at 454; *Farmers Bank v. Hubbard,* 247 Ga. 431, 276 S.E.2d 622 (1981); SDCL 57A–9–507(2).

A bank is not an investor, but rather a lender with the right to define and limit the risks it will accept. *Sumner v. Extebank,* 88 A.D.2d 887, 452 N.Y.S.2d 873 (1982), *modified on other grounds,* 58 N.Y.2d 1087, 462 N.Y.S.2d 810, 449 N.E.2d 704 (1982). VonEyes' argument also ignores two factors: To continue to feed the cattle depletes the feed supply upon which Bank also had a lien and, more importantly perhaps, the interest continues to accrue daily during that interim. We agree that when a creditor finds itself in an insecure position, and without adequate assurances, it need not wait for a speculative better price.

VonEyes next argue that if the cattle had not been placed under such great stress, in the course of repossession, they would have brought a better price at sale. The evidence that the repossession of the cattle was extremely difficult, took hours, and caused stress to the cattle, is uncontroverted. We might also note that the cattle were held for the requisite three days and presumably some of the stress effects should have worn off. The risk of accidental loss or damage is on the debtor when the collateral is in the secured party's possession. SDCL 57A–9–207(2)(b). In *Adams v. Barnett Bank of Polk County,* 469 So.2d 250 (Fla.App.1985), appellant sought damages arising out of the loss and value of security due to alleged damage caused when it was repossessed. The court in *Adams* found that there was no evidence that the creditor, in hiring that third party, was guilty of some fault which foreseeably contributed to plaintiff's damages. In other words, a debtor is precluded from recovering for accidental loss or damage, and a claim for recovery of damages must allege acts or omissions of a nature rising to the level of gross negligence. The evidence here does not support such a finding.

VonEyes next claim that they were damaged because the cattle were not sold as bred cows. The manner in which collateral is sold can affect the price, but a low price is not conclusive proof that a sale has not been commercially reasonable. However, a large discrepancy between sale price and fair market value signals a need for close scrutiny of the sale's procedures. *Connex Press, Inc. v. International Airmotive Inc.,* 436 F.Supp. 51 (D.C.1977); *In re Zsa Zsa Ltd., supra.* VonEyes would have us adopt the view of the *Connex* court that a creditor possessing particular expertise with regard to the collateral must be held to a higher standard than one not so well versed in the trade. We believe, however, that the reasonableness of the manner of the sale in this instance is better viewed from the standpoint of preparation for sale. There is authority that when the cost of preparing the collateral for sale is small, in comparison to the additional price it is likely to generate, the creditor should spend the extra money. *Westgate State Bank,* 231 Kan. 81, 642 P.2d 961 (1982), *cited with approval* in *Topeka Datsun Motor Co. v. Stratton, supra.*

In support of the verdict, we note that three witnesses testified for Bank that the cattle were in generally poor condition prior to the repossession. The record further discloses that in order to sell the cattle as bred cattle, they would have had to be pregnancy tested at a cost of $3.00–$4.00 each. The auctioneer who sold the cattle testified that in his opinion the cattle would not have brought a better price had they been pregnancy tested. A bank officer also testified that the cattle were sold in a manner which would generate the most money.

VonEyes next contend that the sale of feed was commercially unreasonable because the feed was sold two days after the bids were let out and that several requests for the feed came in after it had been sold. SDCL 57A–9–507(2) applies here as well. Private sealed bids are commercially reasonable and Bank is not required to wait for a better price. VonEyes do not claim that any of the later bids would have brought a higher price. Testimony indicates that the price received was within the realm of reasonableness.

We affirm the jury verdict that a commercially reasonable sale was held and conclude there is substantial credible evidence in the record to sustain such a verdict.

Finally, we consider VonEyes' claim that the trial court erred in allowing Bank attorney fees incurred in both the enforcement of the security agreement and the claim and delivery action. In their brief, VonEyes state that the trial court ruled that the South Dakota Supreme Court has ruled that attorney fees are recoverable pursuant to language in security agreement providing for such recovery. VonEyes' briefs do not specify where in the record this trial error occurred, and our review of the judgment and the various orders in the record does not reveal any allowance of attorney fees by the trial court. SDCL 15–26A–64 requires that whenever reference is made in the briefs to any part of the record, it shall be made to the particular part of the record, suitably designated, and to the specific pages thereof. Absent a specific order or judgment allowing attorney fees, or an adequate reference to the record for the trial judge's alleged ruling, we deem the issue waived.

We affirm the directed verdicts as to bad faith and breach of contract, and the jury verdict as to commercially reasonable sale, but we reverse and remand for a new trial that portion of the judgment granting Bank a deficiency judgment due to the error in precluding the evidence regarding excessive trucking charges. In the absence of an order or judgment for attorney fees, there can, of course, be no issue. If there is such an order or judgment that we are unaware of, VonEyes' failure to make adequate reference to the record waives the issue.

MILLER, J., concurs.

WUEST, C.J., concurs specially.

HENDERSON, J., concurs in part and dissents in part.

SABERS, Justice, dissents.

WUEST, Chief Justice (concurring specially).

I concur except for the comments regarding counsel.

HENDERSON, Justice (concurring in part, dissenting in part).

I join that aspect of the majority opinion which reverses on Issue III, namely, a failure of disposing of collateral in a commercially reasonable manner.

However, I join Justice Sabers' dissent in that I am firmly convinced that in small communities such as Miller, Hand County, South Dakota, customers of the bank should not sit on the bank's case as a juror. Hand County is primarily an agricultural county, and there are only two banks located in Miller, a community of less than 3,000 people. An interrelationship between a debtor and creditor-bank is very personal. There have been many bank foreclosures throughout the Midwest, and Hand County is no exception. Times in the agricultural community have been tough. It is very difficult for a juror to owe a bank a substantial amount of money and sit on a case in a free and open state of mind, oblivious to the debt. Bank officers would testify who do business with them. When one considers the meaning of "interest," as set forth in SDCL 15–14–6(5), it would reasonably encompass an interest in the outcome, and the depositors and the borrowers of the bank would have an interest in an outcome of the VonEye loan. Therefore, on challenge for cause for all of the jurors holding a customer relationship with this small-town bank, where customers know the officers very well, and the officers are keenly aware of their relationships with the

customers, and there is a direct bearing on the bank's fiscal soundness, not to mention its practices, five eventual jurors should have been stricken from the jury panel. By doing so, the VonEyes would have had, without any doubt whatsoever, a jury that had no alliance or allegiance with one of the parties to the lawsuit.

Also, I join Justice Sabers in his dissent on Issue II, namely, that the trial court should not have granted a directed verdict against the VonEyes on their cause of action pleaded for breach of an obligation of good faith concerning commercial transactions under SDCL 57A–1–203. Under the evidence presented in this case, there is a statutorily implied obligation of good faith. *First Nat'l Bank in Libby v. Twombly*, 689 P.2d 1226 (Mont.1984). Good faith is defined under SDCL 57A–1–201(19) as being "honesty in fact in the conduct or transaction concerned." Enough evidence was presented so that the jury should have been permitted to bring its collective judgment into play on the bank's general obligation of good faith. "Thus, there are over 50 years of compelling precedent that this reviewing Court must examine the evidence in the light most favorable to the nonmoving party on a motion for directed verdict and to give said nonmoving party the benefit of all reasonable inferences therefrom." *Lovell v. Oahe Elec. Coop.*, 382 N.W.2d 396, 406 (S.D.1986) (Henderson, J., dissenting).

SABERS, Justice (dissenting).

The majority opinion reverses on Issue III. I would also reverse on Issues I and II, because of:

1. The trial court's failure to allow jury challenges to all bank customers when raised by pretrial motion and in the course of voir dire.

2. The trial court's error in granting a directed verdict on VonEyes' cause of action for breach of the obligation of good faith dealing in commercial transactions pursuant to SDCL 57A–1–203.

### 1. *Bank Customers As Jurors*

The trial court should have granted VonEyes' request for a blanket challenge for cause to all depositors and borrowers of Bank on theories of a principal/agent relationship (SDCL 15–14–6(3)) and that those potential jurors had an interest in the action (SDCL 15–14–6(5)). Every prospective juror who is a customer at the bank is in a debtor/creditor relationship with that bank. In other words, either the bank owes them money or they owe the bank money. This debtor/creditor relationship is substantial even without considering the need for that potential juror to seek a loan in the future or an extension for loan payments. In the present economy, these were real probabilities, not just potential sources of prejudice against VonEyes or bias for the Bank.

As indicated, five of the twelve jurors had a debtor/creditor relationship with Bank. The fact that VonEyes challenged only one of these five for cause during trial is not crucial here as it was in *State v. Flack*, 77 S.D. 176, 89 N.W.2d 30 (1958). VonEyes challenged all of the bank customers for cause by pretrial motion, which was denied by the trial court. The right to challenge these bank customers as jurors has been preserved. To require VonEyes to again challenge four of these jurors in front of all of the jurors would require a useless act which would put them in even more disfavor with Bank's customers.

Under South Dakota law the trial judge must exercise his discretion in the selection of a jury. *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (1958) states that "The trial court knows the attorneys, usually most of the jury panel, and the type of community in which the trial is held." *Bartlett*, 92 N.W.2d at 659. The trial court is charged with the obligation to insure that the jury panel is fair and impartial. 47 Am.Jur.2d *Jury* § 23; *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). This duty is even more crucial when the number of jurors who are bank customers will be so proportionately large that an impartial jury cannot be selected. *Olson v. City of Sioux Falls*, 63 S.D. 563, 262 N.W. 85 (1935). It is almost always wise for the trial court to err on the side of disqualification for even if the juror is wrongly removed, the worst

the court will have done in most cases is to have replaced one impartial juror with another. *State v. Ternes,* 259 N.W.2d 296 (N.D.1977).

The right to a jury trial means nothing if the jurors have an interest in the action or in the main question involved (Bank's liability). Jurors who are debtors and creditors of a bank should be excluded, especially where the number of jurors with connections to the bank exceeds forty percent of the entire jury and constitutes fifty percent of the number of jurors needed for a verdict. That VonEyes did not have a fair jury is evident from the following questions and answers of Juror Hurd, who sat as a juror over objection for cause.

> Counsel: Mr. Hurd, if at the conclusion of the evidence you felt that the Von-Eyes had established that their position should prevail, would the fact that you've had a business relationship with the bank make it difficult or uncomfortable with you as far as returning a verdict in favor of the VonEyes?
>
> Juror: Well, maybe a little bit uncomfortable. But—
>
> Counsel: It would cause you some problem in your mind as far as coming back and saying if you felt the evidence was justified, you know, that the bank was wrong in this case?
>
> Juror: Yeh, it could.
>
> Counsel: You feel that could influence your decision-making ability, Mr. Hurd?
>
> Juror: Maybe just a little bit.

No further showing should have been required in this case to dismiss Juror Hurd, and no further showing should be required to reverse and remand for a fair and impartial jury in the retrial.

### 2. *Obligation Of Good Faith*

SDCL 57A–1–203 provides: "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." The trial court erred in granting a directed verdict on VonEyes' cause of action for breach of obligation of good faith because of questions concerning: 1) bad faith involving the 1985 wheat crop, 2) bad faith involving the refusal to advance a 1984 Federal Land Bank payment, 3) failure to dispose of collateral in a commercially reasonable manner, including the necessity for pregnancy testing eighty bred cows, 4) excessive trucking charges, 5) the timing of the public sale of the cattle, and 6) the reasonableness and timeliness of the repossession of the cattle which was extremely stressful to the cattle.

As stated by the majority opinion, "The court must determine if there is any substantial evidence to sustain the cause of action. If there is such evidence as would allow *reasonable minds to differ,* the case must go to the jury. *Haggar v. Olfert,* 387 N.W.2d 45 (S.D.1986); *Sabag v. Continental South Dakota,* 374 N.W.2d 349 (S.D. 1985); *Lytle v. Morgan,* 270 N.W.2d 359 (S.D.1978)." (emphasis added) It is obvious in this case that the evidence was such to allow reasonable minds to differ and therefore the case should have gone to the jury. It was reversible error for the trial court to direct a verdict under these circumstances.

In view of the reversible error on Issues I and II and the reversible error as decided by the majority opinion with respect to Issue III, all of the issues and questions should go back for a new and fair trial.