In the Matter of John Curtis JOHNSON, f/d/b/a CJ's Family Pride, Velitta C. Johnson, Debtors.

John C. JOHNSON, Velitta C. Johnson, Objecting Parties,

v.

U.S. SMALL BUSINESS ADMINISTRATION, Respondent.

Bankruptcy No. 89–30336.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

July 11, 1990.

Lee P. Morgan, Morgan & Silver, Athens, Ga., for debtors.

G. Edward Shaefer, Jr., Sp. Asst. U.S. Atty., Small Business Admin., Atlanta, Ga., for Small Business Admin.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

John C. Johnson, f/d/b/a CJ's Family Pride, and Velitta C. Johnson, Debtors, filed a joint petition under Chapter 13 of the Bankruptcy Code on May 25, 1989. The Small Business Administration ("SBA") filed a proof of claim for a secured claim in the amount of $92,008.72 on June 26, 1989. Debtors filed an "Objection to Claim" on March 7, 1990. The objection came on for hearing on June 21, 1990. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

In May of 1986, Mr. Johnson borrowed $90,000 from the Merchants & Farmers Bank (the "Bank"). The SBA participated in the loan by guaranteeing the debt. As security for the loan, Mr. Johnson pledged all of the equipment and inventory of his convenience store business known as CJ's Family Pride. Debtors also executed a deed to secure debt giving the Bank a security interest in real property owned by Debtors. In April of 1987, Mr. Johnson sold CJ's Family Pride to Clifford J. Petersen and Patricia A. Petersen. The Petersens, as part of the transaction, assumed Mr. Johnson's obligation to the Bank. The Bank and the SBA both consented to the assumption. The assumption agreement specifically provided that Mr. Johnson's obligation to the Bank was not released by the assumption.

After the purchase, the Petersens operated CJ's Family Pride. In late November of 1987, the Bank notified Mr. Johnson that the Petersens were three payments behind on their obligation. On December 3, 1987, the Bank notified Mr. Johnson that the Petersens were being evicted from the store by the landlord. On December 11, 1987, the landlord started the actual eviction, but after negotiations between the Bank and the landlord, the landlord agreed to delay the eviction to give the Bank an opportunity to deal with the equipment and inventory. On December 15, 1987, the Bank's attorney notified Mr. Johnson's attorney and the Petersens' attorney that the Bank would advertise and conduct a sale of the equipment and inventory on December 29, 1987. The sale was to be conducted on the premises of CJ's Family Pride. On December 18, 1987, the Bank's attorney notified Mr. Johnson and the Petersens that they would need to consent to the sale. This was done because the SBA advised the Bank that their consent was needed. The consent included an acknowledgement by

Mr. Johnson and the Petersens that the sale conformed to the requirements of the law and was commercially reasonable. The SBA's position was that without the consent, it would be necessary to have the collateral appraised and to have the sale conducted by an auction company. Mr. Johnson and the Petersens did not sign the consent and the December 29 sale was called off.

In January of 1988, the collateral was removed from the store and placed in a warehouse. The Bank then called upon the SBA to honor its guaranty of the obligation. On February 18, 1988, the Bank assigned all of its interest in the obligation and collateral to the SBA. The SBA had the collateral appraised and advertised the collateral for sale at auction. The collateral was sold at auction in June of 1988. The auction sale resulted in a gross sales price of $9,462.50. After deducting expenses and commissions, the auction netted $6,697.50. The $6,697.50 was applied by the SBA to the obligation owed by Mr. Johnson.

Debtors filed their Chapter 13 petition on May 25, 1989. The SBA filed a proof of claim in the amount of $92,008.73. This amount includes $78,779.08 in principal and $13,229.65 in accrued interest.

It is uncontested that if the collateral had been sold at the store site on December 29, 1987, as the Bank proposed, it would have brought more than it did at auction in the warehouse in June of 1988. At the June auction, the food inventory had no real value. If it had been sold at the store site, the food inventory would have brought some value to apply toward the obligation owed the Bank. The evidence shows that the equipment would have realized more value if sold on site.

Debtors contend that the liquidation of the collateral was not in a commercially reasonable manner. Debtors also contend that the SBA allowed the collateral to be depleted, wasted, and disposed of prior to the auction sale. Debtors contend that the SBA is barred from seeking a deficiency through its proof of claim.

■ Under Georgia law, a secured creditor, after default, may sell or otherwise dispose of collateral by public or private proceedings at any time, place, and on any terms. Every aspect of the disposition, however, including the method, manner, time, place, and terms, must be commercially reasonable. The secured creditor normally must send the debtor reasonable notification of the time and place of any public sale.[1]

■ The fact that a better price could have been obtained by a sale at a different time or by a different method is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.[2]

■ The issue of commercial reasonableness is a question of fact. *ITT Terryphone*

---

**1.** *See* O.C.G.A. § 11–9–504(3) (1982). This section provides:

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale. O.C.G.A. § 11–9–504(3) (1982).

**2.** *See* O.C.G.A. § 11–9–507(2) (1982). This section provides:

(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the se-

*Corp. v. Modems Plus, Inc.,* 171 Ga.App. 710, 320 S.E.2d 784, 787 (1984). *See also Comfort Trane Air Conditioning Co. v. The Trane Co.,* 592 F.2d 1373, 1386 (5th Cir.1979).

■ The burden is on the secured party to prove that the sale of the collateral was commercially reasonable. *Granite Equipment Leasing Corp. v. Marine Development Corp.,* 139 Ga.App. 778, 230 S.E.2d 43, 44 (1976); *see also Comfort Trane Air Conditioning Co. v. The Trane Co.,* 592 F.2d at 1386–87.

In *Massey Ferguson Credit Corp. v. Bond,*[3] the Court of Appeals of Georgia stated:

A sale is commercially reasonable where it is done in public, during business hours, upon adequate notice within a reasonable time of repossession, and under conditions reasonably calculated to bring a fair market price.

176 Ga.App. at 218, 335 S.E.2d at 454.

In *Emmons v. Burkett,*[4] the Supreme Court of Georgia stated:

We therefore now adopt the rebuttable-presumption rule, both for situations in which the creditor fails to give notice of a sale, and for situations in which the creditor fails to conduct a commercially reasonable sale.

256 Ga. at 859, 353 S.E.2d at 911. The court further stated:

Under the rebuttable-presumption rule, if a creditor fails to give notice or conducts an unreasonable sale, the presumption is raised that the value of the collateral is equal to the indebtedness. To overcome this presumption, the creditor must present evidence of the fair and reasonable value of the collateral and the

evidence must show that such value was less than the debt. See *Farmers Bank v. Hubbard,* supra, 247 Ga. [431] at 435 and 437, 276 S.E.2d 622 [(1981)]. If the creditor rebuts the presumption, he may maintain an action against the debtor or guarantor for any deficiency. Any loss suffered by the debtor as a consequence of the failure to give notice or to conduct a commercially reasonable sale is recoverable under § 11–9–507 and may be set off against the deficiency. For example, if a creditor has conducted a commercially unreasonable sale, the debtor may suffer a loss, in that he will not receive as much of a credit from the sale of the collateral as he should have. In such an instance, the debtor is entitled to be awarded an additional credit equalling the difference between the fair market value of the collateral and the amount for which the collateral was sold.

256 Ga. at 857, 353 S.E.2d at 910.

The SBA introduced into evidence an appraisal of the inventory and equipment of CJ's Family Pride dated June 13, 1988, by A–1 Equipment Liquidators. The fair market value of the equipment is shown as $6,300. The appraisal states that the groceries and dry goods should sell for about ten to thirty cents on the dollar. The appraisal lists but does not place a value on four underground steel tanks. The gross proceeds of the auction were $9,462.50.

Mr. Johnson testified that in December of 1987 he saw the Petersens remove three truck loads of inventory and equipment from the store. He also testified that the Petersens did not replace inventory as merchandise in the store was sold.

The facts show that the Bank obtained possession of the collateral in December of

---

cured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors'

committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable.
O.C.G.A. § 11–9–507(2) (1982).

3. 176 Ga.App. 217, 335 S.E.2d 454 (1985), cert. denied (1985).

4. 256 Ga. 855, 353 S.E.2d 908 (1987).

1987. The collateral was removed from the store and placed in a warehouse in January of 1988. The auction sale was conducted in June of 1988. During this six-month period, the food inventory lost all its value. The equipment brought less than it would have if sold at the store site.

In *ITT Terryphone Corp. v. Modems. Plus, Inc.,*[5] the Court of Appeals of Georgia stated:

> ["']Once a creditor has *possession* he must act in a *commercially reasonable manner* toward sale, lease, proposed retention, where permissible, or other disposition ... If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. *To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery.'* [Cit.]" (Emphasis supplied.) *Henderson Few & Co. v. Rollins Communications,* 148 Ga.App. 139, 141, 250 S.E.2d 830 (1978).
>
> Thus, a creditor must act in a commercially reasonable manner once he has possession of the collateral.

171 Ga.App. at 712, 320 S.E.2d at 787.

■ The Bank planned to conduct a timely sale of the collateral from the store site. The SBA wanted Debtors to consent, in advance, that the sale conformed to the requirements of the law and was commercially reasonable. Debtors refused to sign the consent. The SBA has cited no Georgia authority which requires a debtor to agree in advance that a proposed sale is commercially reasonable. The Court is persuaded that the SBA, not Debtors, was responsible for the delay. It is undisputed that the value of the food inventory substantially diminished by the time of auction. The equipment brought less than it would have if it had been sold at the store site in a timely manner. The Court is persuaded that the SBA failed to act in a commercially reasonable manner.

The Court has reviewed the evidence presented at the hearing on June 21, 1990, and is unable to determine the amount of damages sustained by Debtors. *See Emmons v. Burkett,* 256 Ga. 855, 353 S.E.2d

908 (1987). The Court, therefore, will schedule a hearing on the issue of damages.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the "Objection to Claim" filed on the 7th day of March, 1990, by John C. Johnson, f/d/b/a CJ's Family Pride, and Velitta C. Johnson, Debtors, is hereby sustained; and it is further

ORDERED that a hearing is hereby scheduled in this matter on the 31st day of August, 1990, at 11:00 a.m., in the United States Courtroom, Second Floor, Post Office Building, Athens, Georgia, and counsel are directed to be present and ready to proceed. Prior to the hearing on damages, counsel are directed to confer in an effort to stipulate the amount of damages.

SO ORDERED.

---

**5.** 171 Ga.App. 710, 320 S.E.2d 784 (1984).