**RAPID CITY TEACHERS FEDERAL
CREDIT UNION, Plaintiff
and Appellee,**

v.

**Jan S. VanTASSEL and Ruby C.
VanTassel, Defendants and
Appellants.**

**No. 16889.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 17, 1990.

Decided Dec. 12, 1990.

Charles J. Mickel, Rapid City, for plaintiff and appellee.

William L. Severns, Deadwood, for defendants and appellants.

## PROCEDURAL HISTORY/ISSUES

HENDERSON, Justice.

On May 26, 1988, Rapid City Teachers Federal Credit Union (Credit Union) commenced an action seeking a deficiency judgment against Jan and Ruby VanTassel after they defaulted on loans provided by the Credit Union. The Credit Union had repossessed and sold two motor vehicles which the VanTassels had given as security on the loans with the Credit Union. However, the amount received after the sale was not sufficient to cover the amount of the loans.

On June 24, 1988, Jan and Ruby VanTassel answered and counterclaimed. The Credit Union filed a Motion for Summary Judgment on the counterclaim which the trial court granted. No appeal was taken from the summary judgment on the counterclaim.

On August 30, 1989, the Credit Union filed a Motion for Summary Judgment on its Complaint and the VanTassels' answer. On September 22, 1989, the trial court entered an Order granting summary judgment in favor of the Credit Union in the amount of $20,303.47. This constitutes principal, interest, and costs on three loan accounts. On appeal, Jan and Ruby VanTassel present this issue:

The record, in its present state, presents a genuine issue of fact and, therefore, the trial court erred in granting the Cred-

it Union's Motion for Summary Judgment.

We agree and therefore reverse.

## FACTS

On February 1, 1984, a loan account was established by Jan VanTassel at the Credit Union. A total of $5,000.00 was borrowed by Jan VanTassel between February 1, 1984 and September 19, 1984. Jan VanTassel secured the entire indebtedness by granting the Credit Union a security interest in his 1977 Chevy Blazer. In December 1985, Jan VanTassel defaulted on the monthly payments ($160) under the loan. The Credit Union declared the entire unpaid balance ($4,182.70 plus interest) immediately due and payable.

Jan VanTassel had previously opened a second loan account with the Credit Union on November 2, 1984. Between November 2, 1984 and January 18, 1985, Jan VanTassel borrowed $1,815.42 from the Credit Union and was obligated to make payments of $62.00 per month. In June 1985, Jan VanTassel defaulted on his monthly payment. The Credit Union declared the entire unpaid balance ($1,789.97) immediately due and payable.

On December 30, 1983, Ruby VanTassel established a loan account with the Credit Union. The note and security agreement, which was co-signed by Jan VanTassel, loaned the VanTassels $9,965.15. The Credit Union took a 1982 Volvo 244DL as collateral. In January 1985, the VanTassels defaulted on this loan account. The balance owing on the loan account at the time of default was $7,012.82 plus interest.

Pursuant to the terms of the security agreement, the Credit Union had a right to repossess the two vehicles upon default on the loans. These vehicles were located and repossessed by two employees of the Credit Union, Ron Peters (Peters) and Jeff Jorgenson (Jorgenson) on August 28, 1988.

On September 3, 1985, a redemption letter was sent to the VanTassels. In the letter, the VanTassels were informed that their vehicles had been repossessed and demand was made for the outstanding balance on the loan. They were further advised that if the unpaid balance was not paid by September 17, 1985, that the vehicles would be sold at a private sale and that they would be liable for any deficiency. No payment was received from the VanTassels.

A notice of sale was placed on the Credit Union's bulletin board. Other Credit Unions in the Rapid City area were notified of the repossession. The Volvo was taken to two Rapid City car dealers, McKie Johnson Ford and Jacobs Motors, where both dealers declined to make a bid on the vehicle.

An advertisement was placed in the Guide and the Action Advertiser, trade circulars in the Rapid City area, for the sale of both vehicles. This advertisement occasioned four bids on each vehicle. The two highest bids were accepted on the vehicles ($2,950 for the Volvo and $625 for the Blazer). These proceeds were applied to the loans.

After the sale of the repossessed vehicles, the Credit Union made several unsuccessful attempts to secure payment for the outstanding loan balances. In May 1988, the Credit Union brought suit to collect the outstanding deficiency balance.

## DECISION

I. *The trial court erred in granting the Credit Union's Motion for Summary Judgment.*

VanTassels contend a material issue of fact exists with regard to the Credit Union's actions in selling their vehicles commercially reasonable.

Generally, when a creditor sues for a deficiency, he bears the burden of proving that disposition of the collateral was conducted in compliance with the Uniform Commercial Code. *First Bank v. Haberer Dairy & Farm Equip.*, 412 N.W.2d 866 (S.D.1987) (*citing Clark Leasing Corp. v. White Sands Forest Prod., Inc.*, 87 N.M. 451, 535 P.2d 1077 (1975)) (interpreting U.C.C. 9–504(3) which parallels SDCL 57A–9–504(3)). A creditor's right to dispose of collateral under SDCL 57A–9–504(3) is subject to two requirements: (1) creditor must

send notice of the sale, and (2) the method, manner, time, place and terms of the sale must be commercially reasonable. *First Bank of South Dakota v. VonEye*, 425 N.W.2d 630 (S.D.1988).[1] We hold that the second requirement presents questions of fact for determination by the trial court[2]. Therefore, entry of a summary judgment was improper.

The Credit Union proffered affidavits from Jorgensen and Peters, loan officers affiliated with the Credit Union. Jorgensen and Peters offered testimony regarding the notice of the proposed sale and the condition of the cars. Their statements were opposed by Jan VanTassel's own affidavit. Specifically, the affidavits can be broken down as follows:

| Credit Union | Jan VanTassel |
|---|---|
| 1. Old police car is worth less than the same "civilian" car. | 1. Technically a police car, but had been used primarily to transport the mayor and chief of police and had no hard use. Credit Union knew it was a police car when the car was pledged as collateral. |
| 2. Turbo did not work. | 2. It had been replaced shortly before VanTassel bought it. |
| 3. Fuel pump needs to be replaced. | 3. VanTassel brought it in to Jacobs Motors shortly before repossession and was advised that it did not need replacement. It was functioning properly but had some noise. |
| 4. Price quote in N.A.D.A. Official Used Car Guide stated the price of the vehicles. | 4. Credit Union used prices quoted in the "Guide" six months after repossession. This obviously shows a lower price than what VanTassel could have received at the time of repossession.<br><br>The "Guide" does not mention a deduction for police vehicles.<br><br>The "Guide" shows that the Bank sold the vehicles for several thousand dollars less than book value. |
| 5. Condition of Blazer was terrible; it has grass sprouting from the rear portion. | 5. Blazer had been used to haul wood. There were grass and wood chips in the car for that reason. No grass was growing in back of the car. |
| 6. Blazer had serious transmission problems. | 6. The flywheel was recently replaced. In doing so, the o-ring had been damaged emitting small amounts of transmission fluid. Cost would be less than one dollar to fix and a few minutes of a mechanic's time. |

1. It should be noted that this case, unlike *VonEye* and *Haberer,* was decided on summary judgment.

2. The VanTassels have not argued in their brief that the notice of sale was faulty.

Jan VanTassel

7. Generally, the Blazer was in poor mechanical condition.

7. Blazer was recently aligned; in the year prior to repossession, VanTassels had the engine tuned, the brakes redone, and installed a new U-joint.

Thus, we cannot agree with the trial court that there is no genuine issue as to any material fact or that the Credit Union was entitled to judgment as a matter of law. We hold that the opposing affidavits create a genuine issue of material fact as to the sale of the collateral being commercially reasonable. Therefore, summary judgment is precluded. In such a case, the trial judge should not resolve the evidentiary conflict on the basis of which affidavit he believes. Rather, the parties should have presented their evidence and testimony. Via testimony, the trial judge then could make factual findings on the commercial reasonableness of the sale upon a full disclosure of the dispute.

In *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968) we held that summary judgment was proper when the moving party demonstrates the absence of any genuine issue of material fact and shows entitlement to judgment on the merits as a matter of law. *Pickering v. Pickering*, 434 N.W.2d 758 (S.D.1989). However, the evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Pickering*, 434 N.W.2d at 760–761; *Wilson*, 83 S.D. at 210, 157 N.W.2d at 21. As reflected above, there are reasonable doubts concerning the factual allegations of the Credit Union. VanTassels have made a challenge to the sale of their vehicles by asserting specific facts.

In the present case, a complete trial with both parties having the opportunity to present testimony and to rebut testimony is vital to determine the commercial reasonableness of the sale.

Reversed.

All the Justices concur.